CENTRAL NATIONAL FIRE INSURANCE COMPANY, Appellant, v.
OMAHA LIBERTY FIRE INSURANCE COMPANY, Appellee.

**PAYMENT:** Requisites and Sufficiency—What Constitutes Payment.
1 The act of a general policy-issuing insurance agent, in making a
monthly report to his principal as to (1) the number and amount
of insurance risks taken, (2) the full amount of original premiums
contracted for, (3) the amount of reinsurance written on said risks,
and (4) the amount *charged against the principal* as premiums for
such reinsurance, when, as a matter of fact, the agent had not yet
received said original premiums, does not constitute *payment* or
evidence of *payment* of said reinsurance premiums to the reinsuring
company, even though the said agent is, at the time, also the agent
of the reinsuring company for the purpose of issuing said rein-
surance.

**CONTRACTS:** Construction—Construction Against Party Using Words.
2 General principle reaffirmed that an instrument will be construed
against the author of it rather than in his favor. Especially will
such adverse construction prevail when it is in harmony with the
mutual constructions of all the parties involved.

*Appeal from Polk District Court.*—J. D. WALLINGFORD, Judge.

SEPTEMBER 19, 1922.

ACTION at law. Both parties are fire insurance companies,
the defendant having reinsured certain policies of the plaintiff.
The plaintiff sued to recover from the defendant its pro-rata
share of certain losses adjusted by the plaintiff, and also certain
unearned premiums alleged to be due from the defendant to the
plaintiff by reason of the cancellation of reinsurance certificates
on which the premium had been paid to the defendant. There
was a finding for the plaintiff on the first branch of its claim,
and for the defendant upon the second. Both parties have ap-
pealed. The plaintiff, having first perfected its appeal, appears
in the record as the appellant.—*Affirmed on both appeals.*

*Henry & Henry,* for appellant.

*McCarty & Hager* and *R. & F. G. Ryan,* for appellee.

EVANS, J.—I.   We shall deal first with the appeal of the plaintiff.   The case was tried below to the court without a jury. We are required to find the facts as favorably to the appellee as the evidence will permit.

1. PAYMENT: requisites and sufficiency: what constitutes payment.

For some time prior to the events involved herein, the plaintiff had a general agency located at Lancaster, Pennsylvania.   This agency had charge of all eastern business.   The name of the agency was originally Rickert-Mellinger & Company.   This name was later changed to Rickert-Mellinger & Prince; and still later, changed to Kosmak-Mellinger Company.   All of these names appear promiscuously in the record.   For convenience of expression, the briefs have referred to this agency as the Lancaster Agency.   For the same reason, we shall refer to it as the Lancaster Company.   The Lancaster Company had a large number of local subagencies, all of which it appointed with the approval of the plaintiff, and to which the plaintiff sent its regular insurance supplies.   Under the contract of this agency with the plaintiff, a limitation was put as to the extent of liability which the plaintiff would carry upon any one risk.   Where the insurance applied for exceeded such limits, the general agents were permitted to write the same for the plaintiff, but were required also to procure reinsurance on such risk, so as to reduce the liability of the plaintiff company to its proper limits.   The Lancaster Company began to obtain reinsurance of plaintiff's policies in the defendant company on or about March 15, 1920.   On the second day of April, the defendant company, in writing, constituted the Lancaster Company as its agent, whereby the defendant company authorized the latter to issue its certificates of reinsurance and to collect premiums therefor.   From that time until May 15, 1920, the Lancaster Company acted as the general agent of the plaintiff company, as before, and also as agent for the defendant company for the sole purpose of reinsurance of the policies of companies of which such Lancaster Company was the general agent.   Pursuant to this authority, the Lancaster Company issued reinsurance certificates for the defendant company upon policies of the plaintiff company to

the number of 623.  The general scheme of reinsurance is that the reinsuring company takes a specified share of the risk and receives a proportionate share of the premium contracted for by the original insuring company.  The commission of the agent is taken from the original premium, and the reinsuring company takes its share of the premium, subject to such deduction.  The Lancaster Company made monthly reports at the close of each month to the plaintiff company, showing the business transacted for that month.  This report disclosed all the insurance taken and all reinsurance ceded.  It also disclosed the full amount of premiums contracted for and the amount of commissions charged against the same and the amount charged as premiums for reinsurance.  Of the reinsurance premiums contracted for by the defendant company, none were ever received by it.  This is its answer to the claim of the plaintiff for the *return* of unearned premiums.  The contention of the plaintiff is that the premiums were all paid to the Lancaster Company as the reinsurance agent of the defendant.  The defendant responds that they were never paid even to the Lancaster Company.  It is literally true, upon the record, that no reinsurance premium was ever paid *to the Lancaster Company* by the plaintiff or in its behalf, unless it is to be deemed conclusive, as a matter of law, that the monthly reports made by the Lancaster Company to the plaintiff as its own agent, wherein all debits and credits were computed, constituted payment.  This presents the one question involved in the plaintiff's appeal.

Going into further detail, the evidence tends to show that the Lancaster Company was seriously in arrears with the plaintiff, prior to the time of its first connection with the defendant. The method and plan of collecting premiums for business done were all fixed by the regulations of the plaintiff company and its agencies, prior to the defendant's connection.  This was that premiums were not due from local agencies, or presumably from policyholders, until 60 days from the last day of the month in which the business was written, and were not due from the general agency to the insuring companies until 75 days from the last day of the month in which the business was written.  All the reinsurance risks of the defendant company were written between March 15th and May 15th, inclusive.  Up to the latter

date, not a dollar of premium for any of the insurance or rein-
surance had become due, either from the general agency to the
insuring company or from the local agents to the general agency.
Nor does it appear that a dollar thereof had, in fact, been paid.
On May 15th, the plaintiff company terminated the agency of
the Lancaster Company, and appointed a New York company
as its general agent for its eastern business. Plaintiff assumed
charge of all the local agencies (and the Lancaster Company
acquiesced therein), and instructed them to recognize hence-
forth the New York company as plaintiff's general agent, and
to transfer all their business thereto, and to remit thereto all
collections of premiums; and these instructions were substan-
tially complied with by the local agents. The exception to this
statement is that about $1,800 of remittances were made by
local agents to the Lancaster Company, which company recog-
nized the ownership by the plaintiff of all said funds, and de-
livered the same to it.

The broad proposition contended for by the plaintiff is that,
inasmuch as the Lancaster Company was the agent of the de-
fendant for the collection of premiums, and inasmuch as it had
charged up against the plaintiff the amount of such premiums
in its monthly reports, this was, in effect, an admission by the
agency that the money was in its hands, and was an evidence
of the fact, upon which plaintiff had a right to rely. Reliance
is placed upon cases where third parties have dealt with the
principal through an agent who was acting within the scope of
his authority, and where such agent has assumed to receive col-
lection in other form than money. These are all cases where the
agent has acted within the scope of his authority, and where he
sustained no relation of agency to such third party. In the case
before us, the agency of the Lancaster Company was a dual
agency. In the issuance of a reinsurance certificate by the de-
fendant, and an acceptance thereof by the plaintiff, the parties
hereto were the principals in the transaction. The Lancaster
Company acted for both of them. It was authorized by both of
them so to do. The relation of the Lancaster Company to each
principal was distinct. As between the principals themselves,
the plaintiff became debtor to the defendant for all the reinsur-
ance premiums. The defendant had no other right of action for

the premiums than against the plaintiff. On the other hand, the local agents were the agents of the plaintiff. In all its dealings with them, the Lancaster Company was agent for the plaintiff. The policyholders were debtors to the plaintiff for the full amount of the premiums contracted for. When such premiums were collected by the local agent, the money belonged to the plaintiff—all of it. When it passed from the hands of the local agent to the Lancaster Company, it still passed and remained for the time being as the money of the plaintiff. Up to this point, the agency of the Lancaster Company for the defendant would not function in the collection of premiums. If, up to this point, there were any negligence or misappropriation or defalcation, it would not be chargeable to the defendant. The authority of the Lancaster Company to collect premiums was an authority to collect the same from the defendant's debtor, the plaintiff. The plaintiff might discharge this debt either by paying the money directly to the Lancaster Company or by permitting the Lancaster Company to retain out of moneys of the plaintiff in its hands the amount of such premiums. It could not shift upon the defendant the duty to see that the dual agent collect the plaintiff's money from the local agents or from the policyholders. Any default in that regard would be chargeable to the plaintiff, as principal, and not to the defendant. The monthly report made by the Lancaster Company to the plaintiff was neither payment nor evidence of payment of the reinsurance premium. It was strictly a transaction between the plaintiff and its own general agent, and was wholly within the scope of the general agency. The reports for March and April are in the record. Each purports to be a report of business done for that month. No remittance accompanied it. No remittance was due, though the report showed a balance of several thousand dollars in favor of the plaintiff. Such balance was neither due from the general agent nor due from the policyholders, as the original source of the premiums. The report was a mere matter of bookkeeping and accounting between the principal and agent, and furnished the appropriate basis for a future application of the premiums, when they should come into the hands of the general agent. That this was the plaintiff's own view of its relation to the uncollected resources of the

agency is indicated by the action of the plaintiff in assuming full direction of such resources when it terminated the general agency and transferred the same to the New York company. It asserted its ownership of all premiums under the control of the local agencies. It had a right to do what it did. It was the owner of such resources. But it did not thereby change its relation to the defendant, as its debtor for the reinsurance premiums. Though the authority of the Lancaster Company still continued as agent for the defendant to collect the reinsurance premiums, it was an authority to collect only from the plaintiff. If it failed to collect, it may have breached its duty to the defendant; but this did not discharge plaintiff's debt. Nothing less than the payment by the plaintiff, directly or indirectly, would discharge it. The only claim for plaintiff is that it indirectly paid the same in the regular course of business by leaving in the hands of the Lancaster Company sufficient of plaintiff's moneys to discharge the same. The only basis of fact in the record for this contention is, not that the Lancaster Company had received the premiums and had retained defendant's share thereof, and not that it had in its hands any of the plaintiff's money, as received from any source, but that, in its two monthly reports, it entered as debits against the plaintiff the amount of reinsurance premiums to be due in the future on each certificate of reinsurance. This did not constitute a collection of the reinsurance premium by the Lancaster Company, nor a payment thereof by the plaintiff.

The net result of the defendant's business of two months with the plaintiff's general agent was that the defendant reinsured 623 of the plaintiff's policies, and has borne its pro-rata share of the losses thereunder, but has never, in fact, received a dollar of premium for such undertaking. It finally canceled all its reinsurance certificates, for want of payment of the premiums. The plaintiff seeks in this suit to *recover* from it approximately $4,000, as alleged unearned premiums, because it canceled its certificates before the maturity of the policies. Necessarily, the plaintiff must prove that it *paid* to defendant the premiums before it can *recover* the same as unearned. We are clear that the adverse finding of the trial court on this branch of the case was correct.

II.  Upon the other branch of the case, the defendant has appealed.  Pursuant to some previous correspondence with the plaintiff, the defendant wrote the following letter:

2. CONTRACTS:
   construction:
   construction
   against party
   using words.

"Omaha, Nebraska.

"August 6th, 1920.

"Central National Fire Insurance Co.,

"Des Moines, Iowa.

"Gentlemen:

"We hereby give you formal notice of cancellation of all reinsurance ceded this company through the office of Kosmak-Mellinger Company, Inc., including all entries from Entry No. 5001 to 5388 inclusive.

"No tender of the unearned premiums on any of this business is made for the reason that none of the premiums now past due and unpaid on this business has ever been received by this company.

"We kindly request the immediate return of all reinsurance certificates on this business.  We are,

"Very truly yours,

"Omaha Liberty Fire Insurance Company,

"R. J. Wachter, Secretary."

In response thereto, the plaintiff first objected that the defendant had no right to cancel its certificates without returning the unearned premiums.  Later, it complied with the request of the letter by returning canceled the 388 certificates called for. As heretofore indicated, however, the total number of reinsurance certificates of the defendant held by the plaintiff was 623, and they were identified by the numbers 5001 to 5623, inclusive. This left in the hands of the plaintiff 235 of the certificates.  Subsequently, losses ensued under some of the policies, and the plaintiff has sued to recover the defendant's pro-rata share of the losses under such policies.  The defense is that, by its letter of August 6th, the defendant had canceled "all reinsurance" ceded to it by the Kosmak-Mellinger Company.  The response of plaintiff to this defense is that the letter of August 6th canceled only Certificates Nos. 5001 to 5388, inclusive.  It will be

seen from the foregoing that the question at this point is one of construction of the letter of August 6th. It is capable of both constructions. Under the well recognized rule, it is to be construed against the author of it, rather than in his favor. This construction is further aided by the fact that both parties put the same practical construction upon it when the plaintiff returned the 388 certificates called for, and withheld the others. Its conduct in that regard indicated its construction of the letter, and the defendant was bound to take notice of it. The defendant accepted the return of the 388 certificates. The plaintiff purported to return them in compliance with the request of the letter of August 6th, and no question was raised by the defendant as to the correctness of such construction. It therefore acquiesced therein. The trial court held that the remaining certificates continued in force and were in force when the certain losses claimed for occurred. We deem that finding also correct. The judgment below is, accordingly,—*Affirmed on both appeals.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.