Appeal of **WILLIAM J. OSTHEIMER.**          Docket No. 18.

A lessee of chattels is not authorized by the Revenue Act of 1918 to take as a deduction amounts set aside as a reserve each year in anticipation of liability under the terms of the lease to replace the property as good as new when the lease was surrendered, canceled, or forfeited and the property returned to the lessor. Only the

amounts actually expended or for which liability had actually been incurred during each taxable year may be deducted during the respective taxable periods.

Submitted September 16, 1924; decided October 21, 1924.

*George W. Wilkinson*, *C. P. A.*, for the taxpayer.

*Willis D. Nance*, *Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before STERNHAGEN, TRAMMELL, and TRUSSELL.

The taxpayer appealed from the determination of the Commissioner in proposing to assess additional income taxes as follows:

For the 9 months' period ended Sept. 30, 1918_____ $5,970.76
For the 12 months' period ended Sept. 30, 1919_____ 14,527.24

On account of the various adjustments proposed to be made in the tax liability for the years 1917 to 1920, inclusive, the Commissioner in his answer denied that the adjustments upon which this appeal is based involved more than $10,000.

From the evidence presented the Board makes the following

FINDINGS OF FACT

The Arcadia Cafe Co. was the owner of certain movable chattels consisting of furniture, carpets, rugs, chinaware, glassware, silverware, and other articles and equipment which it leased to the taxpayer by a written lease dated October 1, 1915. The lease provided that its term should be one year from its date with the option to the lessee to renew each year, provided he secured from the proper authorities a license to sell wines and liquors on the premises and complied with the other terms and conditions of the lease. It was understood by both the lessee and lessor that the lease would be renewed from year to year for an indefinite number of years so long as the terms and conditions were complied with. Unless one of the parties gave to the other written notice for removal at least five months prior to the end of the term, the lease should continue in effect upon the terms and conditions then in force for a further period of one year, and so on from year to year until terminated by either party. The lease also provided that the " personal chattels, supplies, and equipment herewith leased to be maintained by the lessee in as good condition as they now are and in such condition to be redelivered to the lessor at the expiration of the term."

The taxpayer entered into the premises and into possession of the leased chattels on October 1, 1915, conducted a restaurant and bar therein, and during the period from January 1, 1918, to January 31, 1920, and used therein the said chattels and other movable property described in the lease.

The taxpayer kept an accurate record of his restaurant business in appropriate books of account. His accounts were kept on the accrual basis and were closed on the fiscal-year basis ended September 30 of each year. During the respective taxable periods involved the taxpayer set up a reserve out of his earnings for the purpose of meeting his future liability under the terms of the lease to maintain and restore the chattels on the cancellation or surrender of the lease

in as good condition as they were in when he received them. He began to set up this reserve in 1918, prohibition legislation having reached such a stage at that time that it became reasonably certain that he would be unable to secure a license to sell liquors on the premises at some time within the near future, and for that reason he would, on the happening of that event, be required to surrender the chattels back to the lessor in as good condition as they were in when received by him. Prohibition becoming effective on July 1, 1919, the taxpayer was unable to secure a license for the sale of liquors after that date. His lease was canceled and terminated on January 31, 1920. Upon the termination of the lease the taxpayer paid over to the Arcadia Cafe Co., the lessor, a sum in satisfaction of his liability to the said lessor.

The chattels included in the lease could not be maintained and returned to the lessor as good as new under the terms of the lease except by renewals and replacements.

The Commissioner disallowed as deductions the reserves set up by the taxpayer in anticipation of his liability to maintain and restore the chattels when the lease was surrendered or canceled, but allowed as deductions amounts actually paid out each year for such purposes.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

TRAMMELL: The question presented is whether the taxpayer had a right to deduct from his gross income during the taxable periods in question a reserve set up out of earnings during the respective periods for the purpose of satisfying his anticipated liability to the lessor to maintain and restore on the termination of the lease the movable chattels included therein in as good condition as when received.

If it be held that the taxpayer is entitled to a deduction of a reasonable allowance for the wear and tear and exhaustion of the property used in his business under the lease, it was conceded by the Commissioner at the hearing that the amounts claimed for the respective periods are correct.

The taxpayer had no title to the physical property which he used in his business under the lease. He merely had a leasehold estate. This gave him only the use and possession of the property under the terms and conditions stated in the lease. The allowance of a deduction on account of the wear and tear and exhaustion of property, commonly known as depreciation, is based upon the principle of allowing a taxpayer a return of the capital invested in his business before subjecting his earnings therefrom to tax. Recognition is given to the fact that physical assets are constantly being reduced in value on account of wear, tear, and exhaustion thereof in the business. A taxpayer, however, is permitted to have returned to him only the capital which he has invested. What the lessor, or any other person than the taxpayer, had invested in the property is immaterial. It has no necessary relation to the investment of the lessee. Items of expense, whether rentals, amounts required to be paid for

the continued use of property to which the taxpayer has no title, or is not acquiring title, or in which he has no equity, or amounts required by contract to be paid in the ordinary course of business which do not represent payments for property, are not capital investments. Since the taxpayer had no investment of capital in the chattels or the leasehold in this case, there is no basis upon which an allowance for wear, tear, and exhaustion could be based.

The question remains as to whether the taxpayer in this case was entitled to accrue and take as a deduction in the respective periods included in this appeal a liability which it was known would arise when the leased property would be required to be returned to the lessor as good as when received. Since the taxpayer kept his books on the accrual basis, all deductions allowable in determining his net income should be on that basis, including his contractual obligation under the terms of the lease. In order that an item may be accrued, however, a liability must actually be incurred in the taxable year. *Schuster & Co.* v. *Williams*, 283 Fed., 115. The statute recognized the accrual basis of making returns by providing for the deduction of expenses *incurred* but not paid. It is apparent that no liability in praesenti was incurred under the terms of the lease in question in the years 1918 and 1919 however well known it might have been that a liability in some amount would be incurred at some time in the future. The liability to restore chattels as good as new or as good as when received when a lease is ultimately canceled or surrendered at some indefinite or indeterminate time in the future is not a present actual liability, and is not the actual incurring of an expense or liability.

While it might have been sound business practice on the part of the taxpayer to set up a reserve out of his income to meet a *future* liability, such a reserve is not deductible in determining net income. The revenue laws prior to the 1921 Act have never recognized reserves as being deductible from gross income in determining net income except in the case of insurance companies. In the Revenue Act of 1921 specific provision was made for the deduction of reserves for bad debts. If reserves had been deductible under the general provisions of the Act it would not have been necessary to make specific provision for the deduction of particular reserves in the case of insurance companies or for bad debts. The statute specifies what deductions are allowable and, except in the case of insurance companies, no provision is made in the 1918 Act for the deduction of a reserve as such. Items of expense must actually have been paid or liability therefor incurred in order to be deductible under that Act.

The taxpayer was unable to maintain and restore the property at the expiration of the lease in as good condition as when received except by renewals and replacements. Renewals and replacements when actually made by an owner are not allowable deductions in determining taxable income, nor can a reserve set up for such purposes be allowed as a deduction from income. Expenditures made for the purpose of renewals and replacements in the case of an owner constitute capital items. In the case of a lessee of chattels who is required by the terms of the lease to make such renewals or replacements as are necessary to keep the property in as good condi-

tion as when received as additional rental or as a condition to the continued use of the property to which he has no title and is acquiring none, they are deductible, if at all, as expenses paid or incurred in carrying on a trade or business. Reserves for future unincurred expenses are not allowable as deductions under the Revenue Act of 1918.

Sternhagen concurs.
Trussell dissents.