OCEAN ACCIDENT & GUARANTEE CORPORATION, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12348. Promulgated July 9, 1929.

*Ewing Everett*, *Esq.*, *Stuart Chevalier*, *Esq.*, and *F. O. Graves*, *Esq.*, for the petitioner.

*E. C. Lake*, *Esq.*, for the respondent.

## OPINION.

ARUNDELL: There is no controversy in this proceeding as to deductions for additions required by law to be made to reserve funds

or as to amounts actually paid out by petitioner to cover policy losses. The deductions claimed on account of those items have been allowed. What the petitioner is claiming in this proceeding is an amount in addition to the deductions that have been allowed. The claim is made that in each year it is entitled to deduct the increase in amounts set up to cover what it designates as accrued but unpaid losses, the amounts so set up being merely estimates of its probable liability. Details as to the manner of determining the amounts claimed are given in our previous report.

The claim of petitioner is made under both subsections (a) (4) and (a) (10) (b) of section 234 of the Revenue Act of 1918. The first of these subsections allows deductions for " losses sustained during the taxable year and not compensated for by insurance or otherwise." Conceding, for the purpose of considering this case, but not deciding, that amounts paid by an insurance company under policies of insurance are deductible under subsection (a) (4), the question is whether the amounts claimed represent " losses sustained." What is the situation when these amounts are set up? Something has occurred—an accident or an injury to a workman—which may or may not result in liability on the part of the petitioner to pay out money. A report on the accident or injury is made by someone and thereupon an amount is entered in a folder or jacket representing an estimate of petitioner's probable liability in the case. A claim may or may not be filed by the insured or by the beneficiary. Upon further investigation of the case and additional reports on it, frequent changes are made in the estimated amount originally entered; such amount may be eliminated entirely, or it may be doubled or tripled. It may be that in some cases the petitioner admitted liability to the extent of the amount set up; but as to this there is no evidence. Apparently, in some cases liability was not admitted, for at the hearing it was shown that some estimates set up in 1918 were still carried at the close of the year 1927—a period of 10 years. Petitioner's general counsel testified that " as soon as it is practical to ascertain the basis of the injury and the character of the accident, *whether there is a sustained liability or not*, we immediately do what we call, create a claim; that is set up a reserve  *  *  *." From this résumé it seems plain that the petitioner is in the same situation as were the taxpayers in *William J. Ostheimer*, 1 B. T. A. 18, and *Uvalde Company*, 1 B. T. A. 932, in both of which cases reserves were set up for amounts which it was anticipated the taxpayers would be required to pay out to meet contractual liabilities.

Petitioner argues that it is not claiming the deduction of " a reserve for losses to be sustained in the future," but that it seeks " to deduct losses actually sustained and evidenced by accruals." What we have said above is sufficient to dispose of the argument as to the

losses being actually sustained when the reserves were set up; the petitioner then had no loss, but only the prospect of a loss which might or might not materialize.

The next proposition for consideration is whether petitioner is entitled to the deduction claimed under subsection (a) (10) (b) of section 234, which allows insurance companies to deduct "sums other than dividends paid within the taxable year on policy and annuity contracts," bearing in mind that the term " paid " means " paid or accrued " or " paid or incurred," according to the accounting basis used. Section 200, Revenue Act of 1918. The amounts here involved are not claimed as paid in the sense of actual payments of money, but as accruals for losses sustained. It is thus necessary to determine whether they represent properly accruable items. We think our discussion above goes far toward answering this proposition and is sufficient to show that the claimed liabilities for which the reserves were created were not sufficiently definite to warrant an accrual for tax purposes. While the petitioner's experience indicated that some payments would need be made under the policies issued, and it felt that the reserves carried were needed to enable it to determine its financial condition from time to time, these facts do not establish any right to accrue the reserves for the purpose of computing taxable income. In *William J. Ostheimer*, *supra*, we said:

> While it may have been sound practice on the part of the taxpayer to set up a reserve out of his income to meet a future liability, such a reserve is not deductible in determining net income.

And in *Uvalde Company*, *supra*, we quoted from *Consolidated Asphalt Co.*, 1 B. T. A. 79, which followed the *Ostheimer* case, as follows:

> * * * This result is not changed because in the light of general experience the taxpayer feels reasonably certain of the necessity to expend the amount and is impelled by business prudence to set up a reserve therefor. In this instance good accounting and the statute may not be in strict accord since Congress may with entire fairness tax what a very conservative and prudent business man may wish to hold in reserve.

Petitioner cites *Retailers Fire Insurance Co.*, 3 B. T. A. 1186, and *Equity Fire Insurance Co.*, 7 B. T. A. 618, in which we held that deductions for losses under fire insurance policies should be taken in the year in which the fire occurred although actual payment was not made until the following year. In the *Retailers Fire* case we quoted from a ruling of the Bureau of Internal Revenue, in part, as follows:

> Upon the destruction of the building the extent of the M Company's liability which measured its loss was immediately determinable, being controlled by the replacement cost of the buildings at that time. The liability to replace the building rested upon a definite, contractual obligation, was clear and un-

disputed, became fixed at the time of the fire, and was thereafter promptly satisfied.

In the *Equity Fire* case the loss claim was not resisted, and at the close of the taxable year all that remained to be done was to determine the amount of the loss.

In the case before us there are too many contingencies surrounding the amounts sought to be deducted to allow of its being brought within the above decisions.

In the case of *Thorne, Neal & Co., Inc.*, 13 B. T. A. 490, appears the following:

A taxpayer operating a large number of trucks in a populous city might have many claims filed against it for damages both to the person and to property. Some of these claims may be entirely groundless. We think it can not be maintained that merely because a taxpayer may be subject to a liability on some of these claims he should charge himself with the liability prior to the date the amount thereof is actually ascertained.

\*        \*        \*        \*        \*        \*        \*

The Board had held in numerous cases that the deduction for a liability must be taken in the year when the liability was determined. [Citing cases.] In all of the above cases the taxpayer disputed liability and the Board ruled that the deduction must be taken in the year when the liability was determined and not in the year when the transaction occurred, the dispute of the liability being reasonable, although in some of the cases the taxpayer had entered the liability on its books of account.

Applying this rule to the present case, it is plain that the amounts set up by the petitioner, being merely estimates of its probable liability, did not represent liabilities determined in the years in which they were set up, and, hence, are not deductible as liabilities incurred or accrued.

It seems to us that such items as are here involved come more properly under the head of reserves than accruals. In fact, when these items were entered in petitioner's accounts it designated them reserves. The term "reserves" in the law of insurance includes "claims accrued, but contingent and indefinite as to amounts or time of payment." *Maryland Casualty Co.* v. *United States*, 251 U. S. 342. In so far as the state law requires additions to be made to reserves for unpaid claims, the taxing act allows deductions, and where such additions are not required (and they were not required in this case) no deduction therefor can be taken. *McCoach* v. *Insurance Co.*, 244 U. S. 585; *United States* v. *Boston Insurance Co.*, 269 U. S. 197. Perhaps it is because of these last mentioned decisions that petitioner seeks to lift the items in dispute out of the category of reserves, where it originally put them, and to now call them accruals. Changing the designation of an item can not put it in a deductible class when under its proper name it does not belong there.

*Judgment will be entered under Rule 50.*