810

## Massachusetts Protective Association, Inc., Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 19803.   Promulgated January 14, 1930.

*F. H. Nash, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

812

OPINION.

SMITH: The petitioner is taxable under section 246 of the Revenue Act of 1921, which reads as follows:

(a) That, in lieu of the taxes imposed by sections 230 and 1000, there shall be levied, collected and paid for the calendar year 1922, and for each taxable year thereafter, upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows:

(1) In the case of such a domestic insurance company the same percentage of its net income as is imposed upon other corporations by section 230;

(2) In the case of such a foreign insurance company the same percentage of its net income from sources within the United States as is imposed upon the net income of other corporations by section 230.

(b) In the case of an insurance company subject to the tax imposed by this section—

(1) The term "gross income" means the combined gross amount, earned during the taxable year, from investment income and from underwriting income as provided in this subdivision, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners;

(2) The term "net income" means the gross income as defined in paragraph (1) of this subdivision less the deductions allowed by section 247;

(3) The term "investment income" means the gross amount of income earned during the taxable year from interest, dividends and rents, computed as follows:

To all interest, dividends and rents received during the taxable year, add interest, dividends and rents due and accrued at the end of the taxable year, and deduct all interest, dividends and rents due and accrued at the end of the preceding taxable year;

(4) The term "underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

(5) The term "premiums earned on insurance contracts during the taxable year" means an amount computed as follows:

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year;

(6) The term "losses incurred" means losses incurred during the taxable year on insurance contracts, computed as follows:

To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year, and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year. To the result so obtained add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year;

(7) The term "expenses incurred" means all expenses shown on the annual statement approved by the National Convention of Insurance Commissioners, and shall be computed as follows:

To all expenses paid during the taxable year add expenses unpaid at the end of the taxable year and deduct expenses unpaid at the end of the preceding taxable year. For the purpose of computing the net income subject to the tax imposed by this section there shall be deducted from expenses incurred as defined in this paragraph all expenses incurred which are not allowed as deductions by section 247.

The petitioner contends that the respondent has erroneously included in its net income the amount of $125,000 received by it in settlement of its suit against the National Protective Association, and the amount of $13,842.61 representing the net gain from policy fees received during the taxable year. It contends that a strict interpretation of the statute above quoted, particularly with reference to the computation of gross income, excludes therefrom both of the amounts in question.

With respect to the $125,000 item we think that the petitioner's contention must be sustained. This amount is neither investment income nor underwriting income as these terms are defined in the statute.

In his report the master in chancery recommended an award for damages in the amount of $193,359.75, made up of both actual and anticipated losses for several years beginning with the year 1917. One of the principal items, amounting to $116,113.11, represents the net worth of new policies which would have been written over a period of three years by 23 of petitioner's agents had not these agents been induced to leave the petitioner and to enter the services of the National Protective Association. Another item of $16,726.50 represents new policies that would have been written by other agents in 1918 but for their services on behalf of the National Protective Association over the same period. A third item of $24,400 represents a part of the salaries paid by the petitioner from August 1, 1917, to February 28, 1918, to officers who were giving a part of their time to the National Protective Association. If the $125,000 item is includable in gross income it must be either "investment income" or "underwriting income." Both of these are carefully defined in the statute. It did not consist of "interest, dividends and rents." It therefore was not "investment income." The statute defines

" underwriting income " as meaning " premiums earned on insurance contracts during the taxable year less losses incurred and expenses paid." We think that it can not fairly be contended that any part of the amount consisted of premiums earned on insurance contracts. The payment was made in compromise of a suit for damages.

Moreover, the amount of $125,000 actually received by the petitioner in 1922 is not the amount of damages recommended in the report of the master in chancery, but is a compromise amount agreed upon by the parties in settlement of the suit. The statute makes no provision for the inclusion in gross income of such an amount, and in determining the petitioner's taxable income we can not go outside of the statute. It was well within the rights of Congress to say what part of their gains the petitioner and other like insurance companies should be taxed upon, or from what sources their taxable income should be derived. It has said that only the earnings from investments and the earnings from premiums on insurance contracts should be taxed. We may presume that Congress was aware in drafting the law that a taxpayer, such as the petitioner, might receive income, in the general sense of the term, from other sources than those named. It is clear, however, that only the income from the specific sources named was intended to be taxed. Any doubt upon the matter must be resolved in favor of the taxpayer.

As to the item representing the net amount of policy fees received by the petitioner during the taxable year 1922, the same test must be applied; that is, whether such amount is a gain through investment income or underwriting income as these terms are defined in the statute.

The term " policy fees " was used by the petitioner to designate the initial amount paid by an applicant on an insurance policy. It covered the cost of the policy to the insured for the period between the effective date of the policy and the due date of the first or next succeeding quarterly premium. The policy fees were usually collected by the agents and retained by them as a part of their compensation. Under the general custom followed by the petitioner and other like insurance companies all of the policy fees collected were either retained by the agents or repaid to them, so that there was no balance left with the company and no gain to the company from this source. During the year under consideration, however, the petitioner required certain of its agents to pay in to it 25 per cent of each policy fee collected, which it held until the second premium had been paid by the policyholder. Where the second premium was never paid the petitioner retained permanently the 25 per cent of the policy fee. The amount of the policy fees so collected by the petitioner during the year 1922 was $476,911.39 and the amount of such fees repaid to the agents was $463,068.78. The difference be-

tween these amounts, $13,842.61, is the amount which the respondent has included in the petitioner's net income.

It seems to us that in determining the amount of the petitioner's gross income for the year under consideration no distinction can be made between the so-called policy fees and the regular quarterly premiums. They were both amounts paid by an insured person for the protection afforded him by his policy. The fact that the petitioner designated the initial payments as policy fees and treated them for administrative purposes in a different manner from the payments thereafter made did not alter their character. They were, nevertheless, we think, " premiums written on insurance contracts during the taxable year " and, therefore, includable in gross income.

While the amount of policy fees received by the petitioner during the taxable year is not included in the amount of gross premiums shown in the underwriting and investment exhibit, we do not think that this fact alone differentiates the amount from premiums or excludes it from gross income for tax purposes. The provision of the statute that the gross income be computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners does not intend to restrict gross income to the actual setup appearing in the statement, but rather contemplates the use of the statement as a guide and the acceptance of the figures and statements therein contained as correct, unless proven to be in error. The underwriting and investment exhibit shows in the profit and loss schedule policy fees received by the petitioner or its agents during the taxable year 1922 in the amount of $476,911.39. This amount should be included in gross income. The amount of such gross income as was retained by or repaid to the agents as compensation is deductible along with the other ordinary and necessary expenses of the business, as provided in section 247 (a) (1) of the statute.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*