NATIONAL CAPITAL INSURANCE COMPANY OF THE DISTRICT OF COLUMBIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56748.    Promulgated August 15, 1933.

*C. B. Stovall, C.P.A.*, and *Charles Kershenbaum, C.P.A.*, for the petitioner.

*L. W. Creason, Esq.*, for the respondent.

1080

1082

OPINION.

SEAWELL: The major question is whether the amounts of $9,647.52 and $490.22 received by the petitioner from the Royal Insurance Co., Ltd., under the provisions of the reinsurance contract, and the sum of $2,909.59 received for acting as broker in the writing of policies of insurance for other companies, constitute taxable income

to the petitioner. No claim is being made by either party that the several amounts have any relation to investment income or gain from the sale or other disposition of property. They differ only as to whether the amounts are taxable as underwriting income. The petitioner claims that the amounts represent commissions earned in its business. We think there is a clear distinction between the amounts received under the reinsurance contract and the fees earned for writing insurance for other companies, and shall first dispose of the former items.

Section 204 (b) of the Revenue Act of 1928 provides that the gross income of an insurance company, such as the petitioner, means "the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, and (B) gain during the taxable year from the sale or other disposition of property." "Underwriting income", as used in the section, means the "premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred." Subsection (4). Subsection (5) defines the phrase "Premiums earned on insurance contracts during the taxable year", used in subsection (4), to mean an amount computed as follows, so far as the definition is material here:

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. * * *

The answer is not controlled by the manner in which the amounts were labeled in the reinsurance contract or set up in petitioner's books and the annual statement approved by the National Convention of Insurance Commissioners. *Doyle* v. *Mitchell Bros. Co.*, 247 U.S. 179; *Massachusetts Protective Assn., Inc.*, 18 B.T.A. 810; *Home Title Ins. Co.* v. *United States*, 50 Fed. (2d) 107; affd., 285 U.S. 191.

In the case of *Central Nat. Fire Ins. Co.* v. *Omaha Liberty Fire Ins. Co.*, 194 Iowa 255; 189 N.W. 723, the court, in speaking generally of reinsurance agreements, said:

The commission of the agent is taken from the original premium, and the reinsuring company takes its share of the premium subject to such deduction.

Nothing of record here establishes that the parties to the reinsurance contract before us intended a different result. The insurance reinsured with the Royal Insurance Co., Ltd., was subject to the same terms and rates of premium as the original policies, and losses and loss expenses paid by the petitioner were assumed by the reinsurer on a pro rata basis. All losses were to be adjusted by the

petitioner alone, except that the Royal Insurance Co., Ltd., reserved the right to participate in the settlement of claims in which its interest exceeded that of the petitioner.

Article 8 of the reinsurance contract provided for a " flat commission " on net premiums received by the Royal Insurance Co., Ltd., from the petitioner, "such commission to cover all expenses, except taxes, Local Board expenses, losses and loss expenses." Article 9 provided for an additional so-called commission based upon the " net results " of the insurance reinsured, computed in the manner set forth in the reinsurance contract. The petitioner was under a contractual obligation to reinsure a portion of its surplus risks with the Royal Insurance Co., Ltd., and had the parties to the contract intended that flat commissions, using the term as it is generally understood, should be paid for the mere performance of such a duty, we think clearer language would have been employed. Commissions paid by the petitioner to its agents, and brokers, for services performed in effecting the insurance reinsured with the Royal Insurance Co., Ltd., was an expense of the petitioner.

The amounts paid by the Royal Insurance Co., Ltd., to the petitioner, pursuant to articles 8 and 9 of the reinsurance contract, as " commissions " reimbursed the petitioner for such expenses. The petitioner, however, treated the payments as though they were commissions earned on the reinsurance contracts, instead of, as it should, reimbursement for expenses incurred in connection with the reinsured insurance. We think, and so hold, the amounts should be treated as reimbursement for expenses incurred in connection with the insurance in question.

We think the petitioner's claim should be denied for other reasons. Section 204 (a) (5) of the Revenue Act of 1928 specifically provides that in the computation of premiums earned on insurance contracts during the taxable year there shall be deducted from gross premiums on insurance contracts within the same year, " return premiums and premiums paid for reinsurance." The petitioner asks us to allow as premiums on reinsurance, the gross premiums, less cancellation and return premiums, on the insurance reinsured with the Royal Insurance Co., Ltd., and relieve it of tax on the so-called commissions received.

The statute contemplates the imposition of a tax on earned premiums, in the determination of the amount of which allowance is made for reinsurance premiums. The net premiums on the insurance reinsured by the petitioner in 1928 with the Royal Insurance Co., Ltd., were $31,922.06, and had that amount been paid without offsets of any kind, the petitioner would be entitled to deduct it from the premiums written on insurance contracts during 1928 in computing the amount of its earned premiums. The whole of the pre-

miums on reinsurance was not paid. The petitioner deducted the sum of $9,647.52 as "commission" when paying the reinsurance premiums, and in addition thereto received from the Royal Insurance Co., Ltd., the amount of $490.22 as "contingent commissions" on the same reinsurance. These amounts, totaling $10,137.74, we think should be regarded as offsets to, or reductions of, the premiums of $31,922.06 on reinsurance. The remainder of $21,784.32 is all the petitioner is actually out of pocket for premiums on reinsurance paid during the taxable year and is the only amount it is entitled to deduct as "premiums paid for reinsurance." The reduction of the amount of premiums on reinsurance results in earned premiums, taxable as underwriting income.

The situation respecting the amount of $2,909.59 received for acting as a broker in writing policies of insurance for other companies is different. Section 204 of the statute limits taxable income of insurance companies, such as the petitioner, to investment income, consisting of interest, dividends and rents; underwriting income, defined as earnings on premiums, computed in a prescribed manner, and gain from the sale or other disposition of property. If the amount is taxable to the petitioner it must be brought within one of the three classifications of income. *Massachusetts Protective Assn., Inc., supra.* See *Bowers* v. *Lawyers Mortgage Co.*, 285 U.S. 182. It is clear that the amount is not investment income, underwriting income, or gain from the sale or other disposition of property. Accordingly, we hold that the amount does not constitute taxable income to the petitioner.

The respondent contends, in the alternative, that if we hold, as we have, that all or a substantial part of the amounts in controversy is not taxable, the petitioner is taxable under section 13 of the 1928 Act as an ordinary domestic corporation.

The governing statute contains no definition of "insurance company." The determination of whether a corporation is taxable as an insurance company is controlled by the character of the business actually carried on by it. *Bowers* v. *Lawyers Mortgage Co., supra.*

The petitioner's business was carried on under a name indicating it to be an insurance company; its charter authorized it to underwrite certain specified forms of insurance; and its activities were examined periodically by the Superintendent of Insurance of the District of Columbia to ascertain whether it was conducting its business pursuant to the laws of the District of Columbia governing insurance companies. It derived substantially all of its income from three sources, namely, investment income, underwriting income, and commissions on policies of insurance written for other insurance companies. For 1928 the petitioner reported net investment income of $16,057.40 and net underwriting income of $57,104.07, a total of

$73,161.47, the basis for the underwriting income being gross premiums of $105,599.06, exclusive of return premiums and cancellations. Other income reported consisted of $428.75 for commissions on real estate loans and the so-called commissions of $13,047.33 in controversy here. After excluding from the latter sum the amount of $10,137.74, which we have held to be taxable as underwriting income, there remains but $2,909.59, representing commissions for writing insurance for other companies, and the item of $428.75, not actually earned in conducting a strictly insurance business. These amounts are small in comparison with gross premiums and underwriting income. Petitioner's chief source of income was from the conduct of activities generally known as an insurance business. Other activities carried on by it were merely incidental thereto and are not sufficient, in our opinion, to warrant a holding that the petitioner is not an insurance company other than a life or mutual company within the meaning of the act.

To support his view, the respondent cites *Title Guarantee & Trust Co.* v. *United States*, 49 Fed. (2d) 641, and *Louisville Title Co.* v. *Lucas*, 27 Fed. (2d) 413. Upon reargument the court reversed itself in the former case, following *Home Title Ins. Co.* v. *United States*, *supra*. The facts in the other case relied upon are distinguishable. There about 42 percent of the corporation's entire income was derived from the operation of a trustee and bond sale service, which service the court held was, in a large part, a distinct business from the insurance business conducted by it.

One other point remains. In their agreed statement of facts the parties stated that the amount of $5,430.11 included in commissions and brokerage on policies placed is an offset against the amount of $23,749.84 deducted as an expense for compensation paid to agents. As we understand the stipulation, no adjustment need be made on account of the manner in which the amounts were reported. However, if we are in error, the question may be settled under Rule 50.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*