AMERICAN TITLE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61461. Promulgated November 29, 1933.

*Murray H. Spahr, Jr., Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: Soon after its organization in 1929 petitioner assumed all the title insurance liabilities of the American Bank & Trust Co. by the issuance of a formal policy of insurance, for which it was paid a fee of $25,000. It included the full amount of this fee,

together with $445.90, representing 10 percent of other premiums on policies written in 1929, in a reserve, the whole amount of which, it contends, should be excluded or deducted from its gross income.

1. In guaranteeing land titles for a consideration, petitioner was engaged in an insurance business within the meaning of the revenue acts, *Home Title Ins. Co.* v. *United States*, 285 U.S. 191; affirming 50 Fed. (2d) 107, and as this business constituted its principal activity, it is taxable as an insurance company. *Bowers* v. *Lawyers Mortgage Co.*, 285 U.S. 182. Sections 201–8 of the Act of 1928, which segregate such companies from the general scheme of taxation, provide special methods for computing the taxable net income of (1) life insurance companies, (2) insurance companies other than life or mutual, and (3) mutual insurance companies other than life. Since petitioner is neither a life nor a mutual company, its net income is to be computed in accordance with section 204, applicable to other companies. By subsection 204 (b) (2) net income is defined as gross income less the deductions allowed by subsection (c); gross income comprises *inter alia* underwriting income, which, by sec. 204 (b) (4), " * * * means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred."

Respondent determined and contends that the premiums paid petitioner for title insurance policies are earned when paid, and cites I. T. 1981, III-1 C.B. 311, and G.C.M. 2332 VI-2 C.B. 262, to this effect as reflecting the departmental attitude. Where a policy is unlimited as to time, he argues, there can not be that segregation between an earned and unearned premium which insurance on life and risks for a time certain affords, and hence no part of the premium can be regarded as unearned. There is something to be said for this, since there is no factual basis to guide the allocation of the premium between earned and unearned. But, in our opinion, it is more important that in the very nature of title insurance such an allocation can have no place. Unlike other insurance, such as life, fire, etc., which protect the insured against future events, title insurance merely guarantees against a future disclosure of unfavorable circumstances existing at the time of the deed. Theoretically (and presumably in the large majority of cases) the insurance liability once assumed continues indefinitely, and the premium is therefore earned immediately upon the assumption of the liability. Petitioner's premiums, therefore, are to be regarded as earned in 1929, and constitute a part of its underwriting income in that year.

This conclusion is not affected by the fact that the first policy was issued in the acquisition of a predecessor company's business, *Hoosier Casualty Co.* v. *Commissioner*, 32 Fed. (2d) 940; affirming 6 B.T.A.

1343; certiorari denied, 280 U.S. 581. Nor is it material that this treatment of title insurance premiums is not reflected. in the underwriting exhibit of the annual statement of the National Convention of Insurance Commissioners, incorporated by reference in section 204 (b)(1) of the act, for that statement was adopted as a guide and not as a limitation on the application of the statute. *United States* v. *Home Title Ins. Co., supra; Massachusetts Protective Assn., Inc.,* 18 B.T.A. 810.

2. In claiming that the reserve is deductible from gross income, petitioner has not invoked section 204 (c), specifying the deductions allowable to insurance companies of its type, and we find no provision of that section which authorizes the deduction of a reserve. The rule that only those deductions specified by statute are to be allowed, *Burnet* v. *Thompson Oil & Gas Co.,* 283 U.S. 301, has been repeatedly applied against the attempted deduction of voluntary reserves, *Readers' Publ. Corp.* v. *United States,* 40 Fed. (2d) 145; 69 Ct. Cls. 681; *Spring Canyon Coal Co.* v. *Commissioner,* 43 Fed. (2d) 78; *Mt. Plymouth Corp.,* 25 B.T.A. 1201; *O. J. Morrison Department Store Co.,* 23 B.T.A. 895; *William J. Ostheimer,* 1 B.T.A. 18, and in the case of insurance companies the reason for its application is particularly cogent because only specified items of their gross income fall within the purview of the taxing act. *Western Casualty Co.,* 20 B.T.A. 738.

Petitioner cites Act No. 362, Laws of Pennsylvania, 1929, which requires title insurance companies to accumulate a reserve until $250,000 has been reached by the setting aside of 10 percent of the premiums on policies issued, or, with the consent of the secretary, a greater amount. It argues that its reserve was thus one " required by law," and seeks to justify the inclusion of the full $25,000 of the first premium plus 10 percent of the later ones by virtue of this act, although it has not shown that the secretary consented to the greater amount. Respondent contends that even if petitioner were permitted to deduct the reserves required by law, such as are allowed life insurance companies, its reserve was not among those contemplated by statute. He argues that not every reserve so required is deductible, but only those which aid " in determining what part of the gross income ought to be treated as net income for purposes of taxation," *United States* v. *Boston Ins. Co.,* 269 U.S. 197; see also *McCoach* v. *Ins. Co. of North America,* 244 U.S. 585. But since, in respect of title insurance companies, there is no provision of the statute which permits the deduction of reserves required by law, it is not necessary to determine to what extent the petitioner's reserve was voluntary and to what extent it was required, because in no event is it deductible.

3. Although we have held above that the entire amount of $25,445.09 received by the petitioner as premiums in 1929 and omitted from its return should have been included in the petitioner's gross income, the respondent in determining the deficiency included only $22,500 of this amount. He now claims an increase in the deficiency because he should have treated the entire amount of $25,445.09 as gross income without deduction. In accordance with the foregoing opinion, this claim for an increase in the deficiency is well founded and must be allowed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*