GEORGE S. VAN SCHAICK, AS SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, AS LIQUIDATOR OF THE LIBERTY MARINE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67263.   Promulgated June 11, 1935.

*Morris Barasch, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

738

**OPINION.**

Matthews: Other questions than those raised by the pleadings suggest themselves. First, have we jurisdiction? The answer to this depends on whether the liquidation proceeding under section 63 of the Insurance Law of New York is a receivership proceeding in a state court within the meaning of section 274 (a) of the Revenue Act of 1928. This section provides that no petition for the redetermination of a deficiency shall be filed with the Board after the appointment of a receiver for the taxpayer " in a receivership proceeding before any court " of any state.

If the Superintendent of Insurance of the State of New York is the receiver of the taxpayer in a " receivership proceeding before a court of the State of New York ", we have no jurisdiction, the taxpayer having been decreed insolvent and liquidation ordered in 1921, long before the taxable years here involved and the filing of the petition. In *Farrell* v. *Stoddard*, 1 Fed. (2d) 802, the court had before it the question as to the nature of the liquidation proceeding under section 63 of the Insurance Law of New York. With respect to this, the court said:

An examination of section 63 of the Insurance Law of the state of New York makes it clear that the superintendent of insurance is a public officer in the executive department of the state government, and that he still retains his character as a public officer when he acts as liquidator of insurance companies under the provisions of this statute. His power to act as custodian of the res comes alone from the statute. The judicial power cannot change or modify this statute, or affect his power in any respect whatever. True, the defendant must first apply to the court for an order to act as liquidator. That, however, merely means that the court must give the signal to start the machinery under which the superintendent, the agent of the executive power, acts. Thereafter the defendant, as the representative of the executive power, pays no heed to the court or its mandates. His chart is the statute under which he acts.

The Superintendent of Insurance of New York is, therefore a statutory receiver and the liquidation proceeding is not a receivership proceeding in a state court within the meaning of section 274 (a). The Board has jurisdiction.

The question also arises as to whether an insurance company in process of liquidation, as here, is subject to the special provisions of the revenue act relating to insurance companies.

The taxpayer is an insurance company other than life or mutual. The fact that it is being liquidated by the Superintendent of Insurance of New York and has been in process of liquidation since February 1921 does not change the character of the corporation. It is, therefore, subject to the tax imposed by section 204 of the Revenue Act of 1928 on insurance companies other than life or mutual, and its net income is required to be computed under the provisions of that section, the pertinent portions of which are quoted in the margin.[1]

The petitioner concedes that the interest received in 1928 and 1929 on the awards is subject to tax, but contends that the principal of the awards is not subject to tax, since it is neither investment income. underwriting income, nor gain on the sale or disposition of property.

It is clear that the principal of the awards was neither investment income nor gain derived from the sale of property; hence, it is not to be included in gross income unless it is underwriting income within the meaning of the statute.

---

[1] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

(a) *Imposition of tax.*—In lieu of the tax imposed by section 13 of this title, there shall be levied, collected, and paid for each taxable year upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows:

\*      \*      \*      \*      \*      \*      \*

(b) *Definition of income, etc.*—In the case of an insurance company subject to the tax imposed by this section—

(1) GROSS INCOME.—"Gross income" means the sum of (A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibt of the annual statement approved by the National Convention of Insurance Commissioners, and (B) gain during the taxable year from the sale or other disposition of property;

(2) NET INCOME.—"Net income" means the gross income as defined in paragraph (1) of this subsection less the deductions allowed by subsection (c) of this section.

(3) INVESTMENT INCOME.—"Investment income" means the gross amount of income earned during the taxable year from interest, dividends, and rents, \* \* \*

(4) UNDERWRITING INCOME.—"Underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

(5) PREMIUMS EARNED.—"Premiums earned on insurance contracts during the taxable year" means an amount computed as follows:

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year;

(6) LOSSES INCURRED.—"Losses incurred" means losses incurred during the taxable year on insurance contracts, computed as follows:

To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year, and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year. To the result so obtained add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year.

Counsel for petitioner states that from the terms employed in the statute and the reference in the statute to the annual statement approved by the National Convention of Insurance Commissioners, the question whether the principal of the awards received by the taxpayer was taxable income resolves itself finally into the question whether the proceeds of the award come within the meaning of the term " salvage ", and reaches the conclusion that the proceeds of the awards are not salvage. He contends that the technical meaning of the term " salvage " as used in the law of insurance, which has application here, is the proceeds received by the insurer (1) after paying total loss or amount of valuation in a valued policy, out of the property, the subject matter of the insurance contract, or (2) after paying total or partial loss, out of the claim that passes to the insurer by virtue of the right of subrogation and not as an incident to the property in the subject matter of the insurance contract, citing *Richards on Insurance*, 3d ed., sec. 196; *Phoenix Insurance Co.* v. *Erie & Western Transportation Co.*, 117 U. S. 312, 320; and *St. Louis, Iron Mountain & Southern Railway Co.* v. *Commercial Union Insurance Co.*, 139 U. S. 223, 235. It is further contended that clearly the awards were not received out of the subject matter of the insurance contracts and that it is equally apparent that the principal of the awards was not received out of the claims that passed to the taxpayer as an insurer by virtue of the right of subrogation, since the assured had no claims against the German Government by whose order the boats were sunk, for the reason that under the rules of international law a belligerent has the right to capture, confiscate, and destroy enemy property on the high seas and no right of indemnification accrues to the enemy whose property has been captured or destroyed, citing *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398, 402; that since the awards received from the Mixed Claims Commission were received neither out of the property which was the subject matter of the insurance contract nor by virtue of the right of subrogation, the principal of the awards does not come under the definition of the term "salvage ", and is, therefore, not brought within the classification of underwriting income in section 204.

We agree with petitioner that the term " salvage " as used in section 204 has the meaning ascribed to it, but we do not agree that taxpayer did not receive the awards by virtue of its right of subrogation to the claims of the assured whose boats were sunk or captured by Germany. Cf. *Marine Transport Co.* v. *Commissioner*, 77 Fed. (2d) 177.

In the instant case the taxpayer, as a marine insurer, was called upon to pay and did pay substantial amounts on policies written by it because the property insured had been seized or destroyed by the

German Government during the years 1914 to 1918, inclusive. A marine insurer is entitled to be subrogated *pro tanto* to the claims of the insured against a third person primarily liable for the losses and it was by virtue of its right of subrogation that the taxpayer received the awards in question. In *Phoenix Insurance Co.* v. *Erie & Western Transportation Co., supra,* one of the cases cited by petitioner, the Supreme Court said:

When goods insured are totally lost, actually or constructively, by perils insured against, the insurer, upon payment of the loss, doubtless becomes subrogated to all the assured's rights of action against third persons who have caused or are responsible for the loss. No express stipulation in the policy of insurance, or abandonment by the assured, is necessary to perfect the title of the insurer. From the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the assured the amount of the idemnity agreed on between them, is entitled, by way of salvage, to the benefit of anything that may be received, either from the remnants of the goods, or from damages paid by third persons for the same loss. But the insurer stands in no relation of contract or of privity with such persons. His title arises out of the contract of insurance, and is derived from the assured alone, and can only be enforced in the right of the latter. * * *

We deem it unnecessary to discuss the nature of the claims against the German Government which passed to the taxpayer, as insurer, for it is evident that the awards were paid by the German Government on account of the damages caused by the destruction or confiscation of certain vessels, and that these awards were received by the taxpayer because it had made payments to the owners of those vessels under contracts of insurance and had thereby succeeded to their rights.

We are of the opinion, therefore, that the principal of the awards is " salvage " within the meaning of that term as used in section 204 (b) (6).

In view of the fact that " salvage " is not included specifically as an item of underwriting income, but is to be used only in computing " losses incurred ", a further question arises. The taxpayer had been in process of liquidation since it was declared insolvent in 1921 and was carrying on no business; therefore, it had no premiums earned on insurance contracts during the taxable years. Section 204 (b) provides that in the case of an insurance company subject to the tax imposed by that section, gross income means the sum of (A) the combined gross amount " earned during the taxable year from investment income and from underwriting income as provided in this subsection ", computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, and (B) gain during the taxable year from the sale or other disposition of property. " Underwriting income " as provided in subsection (b) means " the

premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred." This subsection also prescribes in detail the meaning of "premiums earned on insurance contracts during the taxable year" and "losses incurred." Article 992 of Regulations 74 provides:

ART. 992. *Gross income of insurance companies other than life or mutual.*— Gross income as defined in section 204 (b) means the gross amount of income earned during the taxable year from interest, dividends, rents, and premium income, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, as well as the gain derived from sale or other disposition of property. It does not include increase in liabilities during the year on account of reinsurance treaties, remittances from the home office of a foreign insurance company to the United States branch, borrowed money, gross increase due to adjustments in book value of capital assets, and premium on capital stock sold. The underwriting and investment exhibit is presumed clearly to reflect the true net income of the company, and in so far as it is not inconsistent with the provisions of the Act will be recognized and used as a basis for that purpose. All items of the exhibit, however, do not reflect an insurance company's income as defined in the Act. By reason of the definition of investment income, miscellaneous items which are intended to reflect surplus but do not properly enter into the computation of income, such as dividends declared, home office remittances and receipts, and special deposits, are ignored. Gain or loss from agency balances and bills receivable not admitted as assets on the underwriting and investment exhibit will be ignored, excepting only such agency balances and bills receivable as have been charged off the books of the company as bad debts or, having been previously charged off, are recovered during the taxable year.

This article recognizes that not all items of investment income and underwriting income which properly appear on the underwriting and investment exhibit of the annual statement are required to be included in gross income under the provisions of section 204. This Board has also recognized that not all items constituting gross income under other sections of the statute are income of an insurance company subject to the special provisions of the statute. *Massachusetts Protective Association, Inc.*, 18 B. T. A. 810; *Farmers Life Insurance Co.*, 27 B. T. A. 423; *National Capital Insurance Co. of the District of Columbia*, 28 B. T. A. 1079. The only item of underwriting income which is required to be reported in gross income under section 204 is premium income, which is to be offset by losses incurred and expenses incurred. In the instant case the question arises as to whether the excess of the awards received by way of salvage over losses incurred becomes underwriting income in view of the fact that there were no premiums earned on insurance contracts during the taxable years. In other words, can there be any underwriting income within the meaning of the statute when there are no premiums earned on insurance contracts during the year? "Losses" as defined in subsection (b) (6) are allowed as deductions from gross

income, subsection (c) (4), provided they have not already been allowed in computing underwriting income, subsection (e). While we do not doubt that the excess of the salvage received over losses paid is underwriting income in so far as the insurance company is concerned and that it would appear on the underwriting exhibit of the annual statement as such, it is not " underwriting income " within the meaning of the statute which limits the items of gross income to the items enumerated in subsection (b) (1) and prescribes in detail in other paragraphs of subsection (b) how this income should be computed.

The Revenue Act of 1932 has cured the omission in the 1928 Act by adding to section 204 (b) (1), item (C) : "All other items constituting gross income under section 22."

The effect, therefore, of the receipt of the awards in the taxable years before us is that losses will be reduced or wholly offset but the excess, if any, of the principal of the awards received over losses should not be treated as underwriting income subject to tax.

Respondent determined that the taxpayer was liable for delinquency penalties as provided in section 291. This section provides in part:

SEC. 291. FAILURE TO FILE RETURN.

In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not due to willful neglect no such addition shall be made to the tax. * * *

We are of the opinion that the facts support the petitioner's contention that there was no willful neglect on the part of the Superintendent of Insurance in failing to file timely tax returns for this taxpayer. But, as was held in *Charles E. Pearsall & Son*, 29 B. T. A. 747, the proposed penalties are avoided only when, in addition to the absence of willful neglect, the tardy filing is the result of " reasonable cause ", which has been defined to be such a cause as would prompt an ordinarily intelligent and prudent business man to have so acted under similar circumstances. We have found that the delay in filing the returns in the instant case was not due to reasonable cause. The record discloses that the General Counsel of the Bureau of Internal Revenue rendered an opinion in June 1928, which is prior to the due dates of the returns for the taxable years involved herein, holding that the Superintendent of Insurance of New York was required to file tax returns for companies in process of liquidation under section 63 of the Insurance Law of New York. The Superintendent of Insurance had authority, under section 63, to employ additional help to assist in the preparation of such returns and did call in outside accountants

in July 1931, which was too late to file returns within the time prescribed by law for the year 1930 and prior years. The determination of the respondent that the taxpayer is liable for delinquency penalties is, therefore, approved.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*