FOSTER WHEELER CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96610.   Promulgated June 11, 1940.

*Schuyler M. Meyer, Esq.*, *Russell D. Morrill, Esq.*, and *John W. Matz, Esq.*, for the petitioner.

*Walt Mandry, Esq.*, for the respondent.

OPINION.

HARRON: This proceeding involves a deficiency determined by the Commissioner in respect of excess profits liability on Navy contracts under the provisions of the so-called Vinson Act. In *Foster Wheeler Corporation*, 40 B. T. A. 1, involving this docket, the Board held that it has jurisdiction to redetermine such deficiencies. The Commissioner's motion to dismiss this case was denied by order of the Board pursuant to the opinion in *Foster Wheeler Corporation, supra*. Thereafter, the proceeding was duly heard and submitted for determination of the issue raised by the pleadings.

The question presented is a special question arising under the provisions of the so-called Vinson Act, which, in general, require that the excess profit, if any, realized from a Navy contract completed within the income taxable year shall be paid into the Treasury of the United States by the contractor, to become the property of the United States. Whether or not petitioner realized excess profit from Navy contracts in the income taxable year 1936 in the amount of $883.63 is the ultimate question. The answer to that question turns upon whether or not petitioner completed in 1936 Navy contract No. 39610, hereinafter referred to as the 1934 contract, so as to be entitled to use the loss on that contract as an offset against the gain on contract 49319, which was admittedly completed in 1936. Determination of that question requires consideration of the meaning of the words "* * * such

contracts * * * as are completed by the particular contracting party within the income taxable year" appearing in section 3 (b) of the Vinson Act, as amended by the Act of June 25, 1936.[1]

In its annual report of profit on Navy contracts for 1936, petitioner reported the combined contract prices of Navy contracts Nos. 39610 and 49319. (Contract No. 49319 will be referred to hereafter as the 1936 contract.) Petitioner reported that the 1934 contract was completed in the year 1936. The 1936 contract was completed in the year 1936, and there is no question regarding that contract. Petitioner reported the loss sustained on the 1934 contract and the gain realized on the 1936 contract, and offset the loss against the gain. As a result of this offset, the report showed no excess profit for the year 1936 on Navy contracts to be paid into the Treasury.

The respondent determined that the 1934 contract was completed by petitioner in 1935, within the meaning of section 3 of the Vinson Act, pursuant to article 5 (a) of the regulations prescribed by the Secretary of the Treasury with respect thereto, promulgated in Treasury Decision 4723, approved December 31, 1936, by the Acting Secretary of the Treasury. See Internal Revenue Cumulative Bulletin 1937-1, pp. 519 to 529. Respondent disallowed the offset of the loss from the 1934 contract against the profit from the 1936 contract, with the resulting determination that petitioner realized in 1936 an excess profit of $883.63 on the 1936 Navy contract, payable into the Treasury.

Before turning to the consideration of petitioner's contentions and of the main question, attention is called to the pertinent provisions of section 3 of the Vinson Act before and after the amendment enacted in 1936.

Section 3 (a) of the Vinson Act as originally enacted in 1934 provided, in substance, that in each Navy contract the contractor must agree to make a report on each contract to the Secretary of the Navy upon the completion of the contract; and section 3 (b) provided that the contractor must agree to pay into the Treasury profit in excess of 10 per centum of the total contract price (singular). Thus, as originally enacted, section 3 contemplated that the excess profit, if any, to be paid into the Treasury, would be on the basis of the profit shown on a single Navy contract, and, until the year 1936, a contractor under a Navy contract could not compute net profit on more than one Navy contract completed in an income taxable year in one report, and thereby offset the loss, if any, on one contract, against the profit on another. However, the amendment to section 3 (b) enacted in 1936 changed the terms of section 3 (b)

---

[1] The act known as the Vinson Act was originally enacted March 27, 1934, by the 73d Congress, 2d session. See 48 U. S. Stat. 503, 504, 505. Section 3 (b) of the Vinson Act was amended by Act of June 25, 1936, insofar as material in this case, by the 74th Congress, 2d session. See 49 Stat. 1926, 1927.

to refer to profit in excess of 10 per centum of the total contract *prices* (plural) of such *contracts* (plural) as are completed within the income taxable year; and income taxable years are defined to be such taxable years beginning after December 31, 1935.

It therefore appears, and the parties to this proceeding do not contend otherwise, that under section 3 (b) as amended, in reporting on Navy contracts completed in any income taxable year, including the year 1936 and after, a contractor may report in a single report the combined contract prices of more than one Navy contract completed within the income taxable years, and may compute net gain under all contracts by offsetting loss, if any, against gain, in computing the net income in excess of 10 percent to be paid into the Treasury. See Decisions of the Comptroller General of the United States, vol. 18, p. 84, 87.

It follows, therefore, that if petitioner completed the 1934 contract in the year 1936, he properly computed net gain under both the 1934 and 1936 contracts, offsetting the loss from one against the profit of the other.

The pertinent provisions of section 3 of the Vinson Act as amended in 1936 are set forth in the margin, in so far as it seems necessary to understand the following consideration of the main question.[2]

---

[2] 48 Stat. 503, 505—

SEC. 3. * * * *Provided,* That no contract shall be made by the Secretary of the Navy for the construction and/or manufacture of any complete naval vessel or aircraft, or any portion thereof, herein, heretofore, or hereafter authorized unless the contractor agrees—

(a) To make a report, as hereinafter described, under oath, to the Secretary of the Navy upon the completion of the contract.

\*          \*          \*          \*          \*          \*          \*

The report shall be in form prescribed by the Secretary of the Navy and shall state the total contract price, the cost of performing the contract, the net income, and the per centum such net income bears to the contract price. A copy of such report shall be transmitted to the Secretary of the Treasury for consideration in connection with the Federal income tax returns of the contractor for the taxable year or years concerned.

49 Stat. 1926, 1927—

SEC. 3. (b) To pay into the Treasury *profit,* as hereinafter provided shall be determined by the Treasury Department, *in excess of 10 per centum of the total contract prices, of such contracts within the scope of this section as are completed by the particular contracting party within the income taxable year,* such amount to become the property of the United States, but the surety under such contracts shall not be liable for the payment of such excess profit: *Provided,* That if there is a net loss on all such contracts or subcontracts completed by the particular contractor or subcontractor within any income taxable year, such net loss shall be allowed as a credit in determining the excess profit, if any, for the next succeeding income taxable year: *Provided further,* That if such amount is not voluntarily paid the Secretary of the Treasury shall collect the same under the usual methods employed under the internal-revenue laws to collect Federal income taxes: *Provided further,* That all provisions of law (including penalties) applicable with respect to the taxes imposed by Title I of the Revenue Act of 1934, and not inconsistent with this section, shall be applicable with respect to the assessment, collection, or payment of excess profits to the Treasury as provided by this section, and to refunds by the Treasury of overpayments of excess profits into the Treasury: * * * *And provided further,* That the income taxable years shall be such taxable years beginning after December 31, 1935, except that the above provisos relating to the assessment, collection, payment, or refunding of excess profit to or by the Treasury shall be retroactive to March 27, 1934. [Italics supplied.]

Petitioner contends that the words in section 3 (b), as amended in 1936, "such contracts * * * as are completed by the particular contracting party within the income taxable year", mean such contracts as are completed by final payment on the contract by the Government. Petitioner contends that the 1934 contract was completed in 1936 because the final tests of contract materials aboard ship were completed and final payment by the Government was made in 1936. It is noted that petitioner does not contend that the time of completion of the 1934 contract was extended by petitioner's guarantee to replace "any or all parts giving evidence of defect in material or workmanship within one year after installation and test aboard ship."

On the other hand, respondent contends that the particular words set forth above mean such contracts under which the contract work is completed by the contractor within the taxable year, and that, therefore, the 1934 contract was completed in 1935, when the contract materials were delivered at the respective navy yards and were inspected both as to quality and quantity and passed by naval inspectors, and when payment of 90 percent of the contract price less certain penalties for delay in shipment was made.

Upon due consideration, we are of the opinion that respondent's contention is correct.

The words used in section 3 (b), "such contracts * * * as are completed by the particular contracting party within the income taxable year", seem to be clear and unambiguous. The contracts referred to are those which are *completed by the contractor*. It is proper, therefore, to consider the question by looking at what the performance of the contractor is in the income taxable year. A review of the legislative history of section 3 of the Vinson Act, as amended in 1936, shows that Congress intended that contracts were to be considered completed by the contractor when *the work under the contracts was completed* by the contractor. The Commissioner, in his regulations prescribed under section 3 of the Vinson Act, in article 5 thereof, has defined "completion of the contract" to be the date of delivery of contract materials, unless the Navy contract provides a method for determining the date of completion. See C. B. 1937-1, p. 521. While the Commissioner's definition in his regulation is not determinative, it has not been shown in this case to be unreasonable or to exceed the terms of the statute. His regulation is not inconsistent with the evident intent of Congress as disclosed by the legislative history of section 3 (b), as amended in 1936.

When the bill which later became the Vinson Act of March 27, 1934, was passed by the House of Representatives in its original form, section 3 provided simply for a limitation of the profits on certain Navy contracts, but made no reference to the completion of the

contracts.[3] The first reference to the completion of the contracts was made in an amendment to section 3 of the bill which was passed by the Senate and provided in part that all contractors were to report the net profits from Navy contracts within the scope of the section to the Secretary of the Treasury *"upon completion of the work under such contract."*[4] [Italics supplied.] The conference report on the bill recommended that the House of Representatives agree to the Senate amendment to section 3 of the bill with a further amendment, which later became a part of section 3 of the Vinson Act of March 27, 1934, and provided in part that no Navy contract within the scope of the section was to be made unless the contractor agreed "(a) To make a report * * * to the Secretary of the Navy upon the completion of the contract."[5] In explaining to the House of Representatives the recommendations made in the conference report, Chairman Vinson of the House Naval Affairs Committee stated that the further amendment recommended in the conference report was "not essentially different from the Senate proposal" and set forth "the matter in what is believed to be a more orderly and clearer way."[6] Thus, it is clear that Congress intended that the words "completion of the contract" which were contained in section 3 (a) of the Vinson Act of March 27, 1934, were to have the same meaning as the words "completion of the work under such contract" which were contained in the Senate amendment. The Act of June 25, 1936, amended subdivision (b), and not subdivision (a) of section 3 of the Vinson Act. Subdivision (b) of section 3 of the Vinson Act, as amended, refers to "such contracts * * * as are completed by the particular contracting party" and to "such contracts * * * completed by the particular contractor." It is evident that Congress intended that the meaning of "completed" as used in subdivision (b) of section 3 of the Vinson Act, as amended, was to be the same as the meaning of "completion" as used in subdivision (a), and we believe that Congress has expressed that intent explicitly in the wording of subdivision (b) of section 3 of the Vinson Act as amended.

It should be pointed out that the requirement of section 3 (a) of the Vinson Act that the contractor shall make a report upon the completion of the work under the contract is entirely consistent with the further requirement of section 3 that "The report * * * shall state the total contract price, the cost of performing the contract, the net income and the per centum such net income bears to

---

[3] Congressional Record, 73d Cong., 2d sess., pp. 1629, 1630.
[4] Congressional Record, 73d Cong., 2d sess., pp. 3492, 3793.
[5] Congressional Record, 73d Cong., 2d sess., pp. 5171, 5172.
[6] Congressional Record, 73d Cong., 2d sess., p. 5174.

the contract price." Upon the completion of the work under the contract the contractor is able to state each of the required items. Moreover, section 3 (b) of the Vinson Act as amended provides that "all provisions of law * * * applicable with respect to the taxes imposed by Title I of the Revenue Act of 1934, and not inconsistent with this section, shall be applicable with respect * * * to refunds by the Treasury of overpayments of excess profits" and that the provision "relating to the * * * refunding of excess profits * * * by the Treasury shall be retroactive to March 27, 1934." Thus, if additional costs are incurred or adjustments to the contract price are made after the contractor has made a report of profit on Navy contracts and has paid the excess profits disclosed in the report, the contractor may file a claim for the refund of the amount of the overpayment of excess profits.[7] It should be noted that there is nothing in the record here to show that any additional costs were incurred by petitioner or any adjustments to the contract price were made subsequent to the payment in 1935 of 90 percent of the contract price less certain penalties for delay in shipment.

The facts show that the materials covered by the 1934 contract were completed and delivered in 1935. The petitioner completed its work on the contract materials in 1935. In 1935 the contract materials were inspected "both as to quality and quantity" and passed by naval inspectors. The installation and tests of the contract materials aboard ship, which were made by the Government in 1936, obviously were not part of petitioner's work under the contract. We believe it immaterial that 10 per centum of the contract price was paid by the Government in a year subsequent to the year in which petitioner completed its work and delivered the contract materials. The matter is governed, in our opinion, by the time when the contractor completes the contract work, and not by the time when final payment under the contract is made by the Government.

It is held that the 1934 contract was completed by the petitioner in 1935. Petitioner, therefore, erred in attempting to bring the 1934 contract within the provisions of section 3 (b) of the Vinson Act, as amended in 1936, by reporting the contract price and loss under the 1934 contract with the contract price and gain of the 1936 contract, which was completed in 1936. Respondent's determination is sustained.

Reviewed by the Board.

*Decision will be entered for respondent.*

---

[7] The Commissioner has provided in his regulations prescribed under section 3 of the Vinson Act the method to be followed in filing a claim for refund. See article 19, C. B. 1937-1, p. 529.