Littleton, Judge,
delivered the opinion of the court:
■ The question presented under the facts and the contract provisions set forth in the findings is whether plaintiff is entitled to recover the amount of $36,198.77 which was deducted and withheld by the, defendant from payments otherwise due plaintiff, under another contract, to cover the cost to defendant of the work performed by it at the Naval Gun Factory on gun forgingis made and delivered by plaintiff under contract NOd-420 of March 11, 1933, with the Navy Department, which forgings were finally rejected by the defendant for defects discovered at various stages of manufacture of the gun-tube forgings into complete articles. Plaintiff contends in support of its claimed right to recover the amount so charged against it that the work of radially expanding the gun forgings is a test of the physical qualities thereof; that an appropriate inspection by the defendant of the six rejected forgings should have been made by defendant after the radial expansion stage; that, in all probability, the defects for which these six forgings were ultimately rejected would then have been discovered as a result of that process; that as the Navy Department had, by the provisions of the contract, excluded plaintiff from opportunity of making its insnection for defects in the forgings after the application of that process the defendant obligated itself to conserve the plaintiff’s interests involved by suitably inspecting the forgings itself at that stage; and that by its failure so to conserve plaintiff’s interests it deprived itself of all right to charge against plaintiff’s account the costs of- the -work thereafter done on the six forgings in question.
From the facts and contract provisions, we are of opinion that the cost of the work performed by the defendant at the Naval Gun Factory on the six gun-tube forgings furnished by plaintiff and finally rejected by the defendant for defects discovered at various stages of manufacture was properly charged to plaintiff. The original contract price of $156,373.67 for furnishing the gun-tube forgings in question, and others, had been paid to plaintiff by the defendant prior to the dates on which the six forgings in question were finally rejected. Under its contract of March 11, • 1933, *178 plaintiff was required to deliver thirteen sets of 8"/55 gun forgings in strict accordance with the specifications and drawings furnished. These foi’gings were delivered by plaintiff to the Naval Gun Factory at Washington, D. C., and were provisionally accepted. Under the terms of the contract and specifications these forgings were thereafter to be finished by the defendant at its Naval Gun Factory. During performance of this work by the defendant, sis of the forgings were rejected for defects discovered at various stages of manufacture of the gun-tube forgings, as delivered by plaintiff, into complete gun barrels. The six forgings rejected were numbered 549, 551, 552, 555, 557, and 559. The forging for gun 552 was finally rejected at completion of 8-inch bore; forging for gun 557 was rejected after rifling; and forgings for guns 549, 551, 555, and 559 were rejected after proof-firing. After these forgings had gone through the radial expansion stage, and various other work had been performed on them, the defendant discovered by accident that the forging for gun numbered 556 had developed major defects in the bore immediately after radial expansion, which defects did not exist before radial expansion. This discovery was not made as a result of an inspection of the forging by the defendant after radial expansion, as such inspection was not then and had not been customary, but such discovery was made by a workman who was cleaning this forging after it had been radially expanded. Major defects in the forging for gun numbered 558, subsequently radially expanded but not shown prior to radial expansion, were discovered upon inspection immediately after radial expansion. Both of these forgings were rejected, with the consent of plaintiff, because of the defects so discovered without any further work being done. Neither of these forgings is among those involved in this proceeding.
As a result of the information obtained, as above described, with reference to the two forgings for guns 556 and 558 in May 1984, the defendant, on May 29, 1934, changed its existing practice of inspecting the bore of the gun forgings by the use of a bore-searcher and a telescope every time metal was removed and inaugurated the practice *179 of inspecting gun forgings for defects immediately after tb.e process of radially expanding the forgings had been applied. The changed practice, resulting in this additional inspection, was adopted by the defendant because of the information which had been disclosed concerning forgings 556 and 558, as above mentioned, and because the defendant was concerned about the prevalence of defects due to flakes in forgings then in process of manufacture and by reason of complaints which plaintiff had made about the absence of inspection immediately after radial expansion. At the time of this change other work was being performed by the defendant oh the six forgings involved in this case, but sometime after all of them had been radially expanded and after they had reached other stages of machining for assembly and for final test. The established practice prior to and at the time of plaintiff’s contract in March 1933 and thereafter until May 1934, of inspecting the bore of the gun forgings by the use of a bore-searcher and a telescope every time any metal was removed, was considered adequate to discover any defects resulting from the manufacturing process performed by the defendant of completing the forgings and assembling them into a complete gun, due to the fact that whenever metal is removed by boring a different area is encountered in which there may be defects not present in' the area removed by such boring. The six forgings involved in this case were rejected because of defects developed at various stages of work performed by the defendant in the manufacture of such forgings into complete gun barrels; they were inspected by the defendant in strict accordance with the standard practice in effect prior to and at the time the contract was entered into with plaintiff and between the date of such contract and May 29, 1934.
We are unable to find in the contract and specifications with plaintiff any provision which required defendant, either expressly or by necessary implication, to inspect the gun forgings at any particular stage of manufacture as a condition precedent to the right of defendant under the contract to charge plaintiff with the cost of work performed by defendant on any forgings prior to rejection. Art. 28 of Ordnance Pamphlet 400 relating to inspection of forgings *180 as they were being made at plaintiff’s plant provided that during progress of the work all material should be subject to inspection for defects of material or workmanship, and that all finished articles should be rigidly inspected for defects of any sort in material, workmanship, fit, or efficiency; Such inspection was made. Ordnance Pamphlet 400 contained no requirement as to when, or at what stage of manufacture of the forgings into complete gun barrels, inspection should be made at the Naval Gun Factory. Art. 20 of Navy Ordnance Pamphlet 9 provided that, upon delivery by plaintiff of the forgings, pieces satisfactorily' meeting all the requirements of the specifications as to physical qualities, and were satisfactory as to dimensions, would be provisionally accepted by the defendant and would be considered delivered, but that they would not be considered as finally accepted. This article further provided that final acceptance of a piece could not be claimed because of failure of defendant to discover defects at any particular time, and that forgings might be rejected at any period of machining or assembling by defendant for defects discovered or developed. In view of these provisions of the contract, we think plaintiff' cannot recover the amount charged against it, in accordance with Art. 20 of Navy Ordnance Pamphlet 9, for the cost of work performed by defendant on the forgings which were finally rejected. This article provided that if defects developed in any of .the gun forgings, constituting a gun of such a character as to cause its rejection, the actual expenso incurred by defendant for work done upon the defective material, and upon any other material whose rejection was necessitated by being assembled with such defective material, should be borne by the manufacturer of such defective material.
In addition to what has been said above, it should be pointed out that the record shows that if inspection of the six forgings finally rejected had been made immediately after radial expansion it would not necessarily have disclosed defects which were not apparent before radial expansion (findings 4 and 5). In view of these facts any conclusion that an inspection immediately after radial expansion would have disclosed at that time defects in the six forgings involved, sufficient to cause their rejection be *181 fore any further work was performed on them by the defendant, would be purely speculative. For this reason we cannot sustain plaintiff’s contentions (1) that had the rejected forgings been inspected immediately after radial expansion, the defects, for which those forgings were ultimately rejected, would in all probability have been discovered as a result of that process, and (2) that because of defendant’s failure to make an inspection at that time it was deprived of all rights to charge against plaintiff the cost of work thereafter performed on these forgings.
Upon the evidence disclosed by the record, we cannot conclude that the defendant in any way breached its contract with plaintiff with respect to the six forgings in controversy in following the established practice, so far as these forgings were concerned, of inspecting the bore thereof immediately after metal was removed by boring or machining. Plaintiff’s petition must therefore be dismissed, and it is so ordered.
GreeN, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this ease.