DOUGLAS AIRCRAFT COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105093.    Promulgated April 28, 1942.

*Dana Latham, Esq.*, for the petitioner.
*Samuel Taylor, Esq.*, for the respondent.

1028

**OPINION.**

DISNEY: The petitioner in 1935 entered into a contract to construct airplanes for the Navy Department of the United States. At that time the "Vinson Act" of March 27, 1934, provided, in short, that one contracting with the Secretary of the Navy must contract to make a report to the Secretary upon the completion of the contract, and pay into the Treasury profit above 10 percent, provided that if not voluntarily paid, the excess profit should be collected by the Secretary of the Treasury under the usual methods employed under the internal revenue laws. The act, so far as pertinent here, is set

forth in the margin.[1] No definition of "the completion of the contract" was contained in the act. No provision was made by the act for offsetting one contract against another. The Vinson Act was amended on June 25, 1936. In material part, the amendment is shown in the margin.[2] The amendments provide, in substance, that the profit to be paid into the Treasury should be the profit in excess of 10 percent "of the total contract prices" of such contracts "as are completed by the particular contracting party within the income taxable year", and define the income taxable year as beginning after December 31, 1935. Section 3 (a) of the 1934 Act, containing reference to report upon "completion of the contract" was not amended.

The petitioner herein seeks to bring the contract made in 1935 within the purview of the amended act. Since its fiscal year ended on November 30, under the last proviso to section 3 of the 1936 Act, just above quoted, petitioner's first year affected by the amended act began December 1, 1936; and it is therefore incumbent upon the petitioner, in order to come under the amended act, to show that the con-

---

[1] SEC. 3. The Secretary of the Navy is hereby directed to submit annually to the Bureau of the Budget estimates for the construction of the foregoing vessels and aircraft; and there is hereby authorized to be appropriated such sums as may be necessary to carry into effect the provisions of this Act: *Provided,* That no contract shall be made by the Secretary of the Navy for the construction and/or manufacture of any complete naval vessel or aircraft, or any portion thereof, herein, heretofore, or hereafter authorized unless the contractor agrees—

(a) To make a report, as hereinafter described, under oath, to the Secretary of the Navy upon the completion of the contract.

(b) To pay into the Treasury profit, as hereinafter provided shall be determined by the Treasury Department, in excess of 10 per centum of the total contract price, such amount to become the property of the United States: *Provided,* That if such amount is not voluntarily paid the Secretary of the Treasury may collect the same under the usual methods employed under the internal revenue laws to collect Federal income taxes.

\*     \*     \*     \*     \*     \*     \*

(e) To make no subcontract unless the subcontractor agrees to the foregoing conditions.

\*     \*     \*     \*     \*     \*     \*

[2] SEC. 3. (b) To pay into the Treasury profit, as hereinafter provided shall be determined by the Treasury Department, in excess of 10 per centum of the total contract prices, of such contracts within the scope of this section as are completed by the particular contracting party within the income taxable year, such amount to become the property of the United States, but the surety under such contracts shall not be liable for the payment of such excess profit: *Provided,* That if there is a net loss on all such contracts or subcontracts completed by the particular contractor or subcontractor within any income taxable year, such net loss shall be allowed as a credit in determining the excess profit, if any, for the next succeeding income taxable year: *Provided further,* That if such amount is not voluntarily paid the Secretary of the Treasury shall collect the same under the usual methods employed under the internal-revenue laws to collect Federal income taxes: *Provided further,* That all provisions of law (including penalties) applicable with respect to the taxes imposed by Title I of the Revenue Act of 1934, and not inconsistent with this section, shall be applicable with respect to the assessment, collection, or payment of excess profits to the Treasury as provided by this section, and to refunds by the Treasury of overpayments of excess profits into the Treasury: *And provided further,* That this section shall not apply to contracts or subcontracts for scientific equipment used for communication, target detection, navigation, and fire control as may be so designated by the Secretary of the Navy, and the Secretary of the Navy shall report annually to the Congress the names of such contractors and subcontractors affected by this provision, together with the applicable contracts and the amounts thereof: *And provided further,* That the income-taxable years shall be such taxable years beginning after December 31, 1935, except that the above provisos relating to the assessment, collection, payment, or refunding of excess profit to or by the Treasury shall be retroactive to March 27, 1934.

tract made in 1935 was "completed by the particular contracting party" after December 1, 1936.

The petitioner argues, in effect, that such completion took place after December 1, 1936, because the written contract between the parties contained a provision that for the purposes of the Vinson Act "the contract shall be considered complete upon final payment of the sum due under the provisions of this contract"; and that such final payment (of the 2 percent withheld) was made on April 22, 1940. The respondent agrees that final payment was made on that date, but contends that such payment is not determinative of completion, notwithstanding the contract provision. The petitioner's argument is threefold: That the contract governs, first, because the Vinson Act does not impose the liability for the excess profits, but that it is contractual, and petitioner is therefore bound only by the contract; second, that even if the liability for excess profit arises from the statute itself, nevertheless the parties could by contract define an expression which is undefined in the statute, i. e., define "completion of the contract", and define it as final payment; and, third, that regardless of statutory expression, or contractual provision defining it, nevertheless, in fact the contract was completed only when both parties had fully performed, i. e., only when final payment was received, in 1940. The respondent on his part argues, first, that the contract was completed by delivery of the airplanes in 1935, or, in the alternative, that if not, then it was completed by the expiration of the six-month period within which the petitioner was under obligation to replace defective parts or material—which period expired prior to December 1, 1936. Therefore, he argues, the provisions of the amended Vinson Act do not apply to petitioner's contract here involved.

After much consideration of this question, we are of the opinion that the parties were not free to define in their agreement "completion of the contract", the expression in the Vinson Act. We think that such act does impose the liability for the excess profits. It is true that the form of the act is not altogether clear in this respect, for the provision as to liability for profit is found in connection with the enumeration of points to which anyone contracting with the Secretary of the Navy must agree. Yet, it is a proviso following section 3 (b), and we think it was not intended by Congress as a mere contractual item, but as a positive provision, to the effect that, if the contracting party should fail to pay the excess profit to the Treasury as he had contracted to do, it would be collected under the usual internal revenue laws. This conclusion is reinforced by the form of the amending Act of June 25, 1936. Therein appears not merely the one proviso contained in the original act, but a series of provisos, containing matter on its face not contractual, but comprising positive

provisions of law as to collection of tax on the excess profit. This proceeding involves a proceeding by the Commissioner of Internal Revenue to do precisely what the act provided—to collect where the contracting party fails to pay the excess profit voluntarily into the Treasury. We think that the Vinson Act imposed the liability for the payment to the Treasury of excess profit. The Commissioner's authority rests upon the Vinson Act. We note that I. T. 3284 (C. B. 1939–1, p. 407) is to the effect that failure to include in the contract a provision for limitation of the profit does not prevent liability to pay the excess profit into the Treasury.

Having concluded that the Vinson Act imposes the liability herein involved, we are of the opinion that it follows that the parties may not, in their agreement, define an expression in such statute. That duty devolves upon the tribunal interpreting the statute, and though legislative history, the actions of the parties in performing the contract, and other aids to statutory interpretation may furnish assistance, the parties may not in advance and by their agreement adjudicate the meaning of the statute. *Zappala* v. *Industrial Insurance Commission*, 144 Pac. 54. We need not decide whether they might define an expression in a case where the expression defined by the contract did not comprise a part of the statute forming the basis for the contract and proceeding thereunder. Herein they particularly and carefully contracted a definition "for the purpose of the Vinson Act." Although the regulations for some time after the amendment of the Vinson Act in 1936, in providing that date of delivery is date of completion of the contract, make an exception of contracts which "provide a method for determining the date of completion" which may have meant to cover a definition such as herein involved, we think the regulation could validly make no such exception. We hold that the mere contract of the parties did not serve to settle the statutory meaning of "completion of the contract" and that such contractual agreement that completion was final payment does not alone put the completion in 1940 when final payment took place.

But the petitioner urges, in effect, that the contract was in fact, and regardless of the definition contained, completed only when both parties performed, that is, when the United States finally performed on its part by final payment. In *Foster Wheeler Corporation*, 42 B. T. A. 36, we considered a situation where final payment was urged as completion of contract under the Vinson Act, on the question of offsetting contracts, as here. No contractual definition was there involved; only the question of fact as to when the contract was completed. We examined the amended act and concluded that the expression "such contracts * * * as are completed by the particular contracting party within the income taxable year" was clear and unambiguous and said: "The contracts referred to are

those which are *completed by the contractor.*" We held that the contract involved, entered into in 1934, could not be brought within the provisions of section 3 (b) of the amended Vinson Act. Though the petitioner strongly assails the soundness of that opinion, we adhere to the view taken therein, for we think it plain that Congress intentionally, in the amended act, referred to contract as completed by the particular contracting party, as additional to the previous expression "completion of the contract"; that such treatment was explanatory; and that it is incumbent upon the petitioner, in order to bring the contracts of 1935 within the effect of the amended Vinson Act of 1936, to show, not merely that the Navy Department did not perform, by final payment, until after December 1, 1936, but that the petitioner as "particular contracting party" had not by that date completed the contract on its part. The amended act uses the expression "completed by the particular contracting party" or "particular contractor" three times. We see intent to distinguish from completion by both parties. This is consistent with the fact that the contract here considered, though in the beginning reciting mutual agreement, in article 35 recites merely that "The contractor hereby agrees", among other items, that final payment shall be considered completion of the contract.

That the petitioner had on its part fully completed the contract prior to December 1, 1936, can not be doubted. It had done everything the Navy Department could possibly require it to do, for its airplanes had been delivered and accepted, and the period for suggesting anything further had expired with the end of six months from acceptance. Indeed, we do not understand the petitioner to argue otherwise. In any event, we consider it obvious that, with the delivery and acceptance of the airplanes in 1935, payment of 98 percent on the purchase price thereof, and the passage of the period within which the Navy Department could suggest and require correction of defects, without any such suggestion—all long prior to December 1, 1936—that the petitioner had on its part fully performed, fully completed the contract. Whether delivery of the airplanes, or on the other hand expiration of the period for suggestion of and correction of defects, constituted completion, we need not here determine, for in either event nothing remained on December 1, 1936, for petitioner to complete. In addition to guarantees under article 19 of the contract, petitioner had a definite obligation under article 23 (correction of defects) to make changes involving defects, upon notice within six months after acceptance of the airplanes. In that respect the present case differs from *Foster Wheeler Corporation, supra,* where there was only "guarantee" to replace defective parts within one year. The petitioner in the *Foster Wheeler* case expressly pointed out that he did not contend that completion was coin-

cident with the end of a guarantee period set in the contract. That the Navy Department failed to pay, as provided by the contract, after the expiration of the period for suggestion of defects, suggests to us, not incompleted contract, but breach of contract, which would, in the absence of any other factor (such as petitioner's failure to file report) ordinarily be ground for action for the contract price unpaid. A statute of limitation would not, we think, be tolled by failure to pay, after accrual of such cause of action.

In our opinion the contract was not completed within a taxable year covered by the amended act, within the intendment thereof, and the petitioner is therefore under its terms not entitled to offset one contract against another. We hold that the respondent did not err in determining deficiency on the theory of disallowance of such offset. The petitioner having agreed that under such theory the amount of the deficiency was correctly computed,

*Decision will be entered for the respondent.*