Erie Forge Company v. Commissioner.
Erie Forge Co. v. Commissioner
Docket No. 2283.
United States Tax Court
1945 Tax Ct. Memo LEXIS 3; 4 T.C.M. (CCH) 1127; T.C.M. (RIA) 45384; December 29, 1945
H. A. Mihills, C.P.A., 917 Munsey Bldg., Washington, D.C., for the petitioner. Richard L. Shook, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in excess profits payable into the Treasury on Navy contracts and subcontracts under section 3 of the Vinson Act [1] and additions thereto for delinquency in in filing returns: Year ended
Addition for
April 30
Deficiency
delinquency
1935
$25,692.43
$ 6,423.11
1936
36,251.32
9,062.83
1937
817.90
204.48
1938
2,229.61
557.40
1939
1,458.63
364.66
1940
3,163.71
632.74
$69,613.60
$17,245.22
*4 The petitioner contended in its petition that the deficiencies for all six years were erroneous but waived that assignment except as to the first two years. Its contention is that the Commissioner erred (a) in not computing the two deficiencies as the net excess of profits on all Navy contracts completed during each year, and (b) in holding that contracts were completed where it appears that the articles were delivered and accepted provisionally during the years in question but were subject to a guarantee under which hidden defects might have to be made good in later years. The petitioner also contends that the Commissioner erred in determining the additions in each of the six years for delinquency in filing the returns. All other assignments of error have been waived. Findings of Fact The petitioner is a corporation organized in 1903. It was engaged during the years here in question in the manufacture of steel forgings, ingots, and castings. A minor part of its business during those years was the performance of Navy contracts and *5 subcontracts to which the Vinson Act was applicable. It kept its books and made its returns for Federal income tax and other purposes on the basis of fiscal years ending on April 30th. It used an accrual system in keeping its books. Annual reports of profits on its Vinson Act contracts and subcontracts, together with reports covering each separate contract, were filed by the petitioner for the first time with the collector of internal revenue at Pittsburgh, Pennsylvania, on April 30, 1941. All of those reports were made on the basis of fiscal years ending April 30th. None of those returns was filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law. The petitioner has not shown that the failure to file any of those returns timely was due to reasonable cause. The number of contracts and subcontracts completed in each of the fiscal years and the amount of liability for excess profits returnable to the Treasury shown on the above reports for each of the fiscal years were as follows: Year ended
Contracts
April 30
completed
Liability
1935
10
$ 1,139.29
1936
6
8,686.76
1937
9
14,253.31
1938
17
49,406.96
1939
7
67,581.38
1940
13
166,253.49
Total
62
$307,321.19
*6 The contracts and subcontracts reported covered various items such as "ingots for forgings", "rotor forgings", "rotors for vessels", "forgings for shafts", "crank shafts", "gun housings", "rotor shafts", and "shafts for vessels". Contracts under which the petitioner furnished gun forgings to the Navy were governed by specifications set forth in Navy Ordnance Pamphlet No. 9. The responsibility of the contractor for any forging of that kind terminated upon final acceptance of the forging or at the end of five years from the date of delivery of the forging, whichever was earlier. Gun forgings covered by this pamphlet were completed only in rough form by the petitioner. They were then inspected and provisionally accepted at the petitioner's plant by a representative of the Navy and were then shipped to a Navy Yard for further processing by the Navy. They were not finally accepted by the Navy until all of its work thereon had been completed and a final inspection had revealed no defects. The petitioner was required to replace any forgings found defective and was required to pay any expenses incurred by the Navy in discovering or remedying defects prior to final acceptance or the end *7 of the five-year period. The petitioner usually was not notified of the final acceptance of a forging. The experience of the petitioner was that it sometimes incurred substantial charges in years subsequent to the year of shipment of a forging as the result of the discovery by the Navy of a defect in such gun forging. The Commissioner of Internal Revenue mailed a notice to the petitioner by registered mail on March 31, 1943, notifying it that the determination of its excess profits liability on Navy contracts and subcontracts under section 3 of the Vinson Act disclosed deficiencies totaling $69,613.60 and additions thereto for delinquency in filing returns in the amount of $17,245.22 for the six fiscal years here in question. The amount determined for each year was as set forth above. Opinion MURDOCK, Judge: Section 3 of the Vinson Act requires each contractor and subcontractor to pay into the Treasury all profits in excess of 10 per cent on Navy contracts involving an amount in excess of $10,000. The original Act has been amended several times. The petitioner's first contention is that its liability for its fiscal years ended April 30, 1935 and 1936 is to be determined by taking *8 all of its Navy contracts covered in each of those years, including those on which it may have had losses, those on which its profits may have amounted to less than 10 per cent, and those on which its profits amounted to more than 10 per cent, lumping them all together, and taking the net profits in excess of 10 per cent as its liability under the Vinson Act. This question has been decided adversely to the petitioner. That is, it has been held that each contract or subcontract must be considered separately under the Act of March 27, 1934. Foster Wheeler Corporation, 42 B.T.A. 36, appeal to the Circuit Court of Appeals for the Second Circuit dismissed Douglas Aircraft Co., Inc., 46 B.T.A. 1025. An amendment of June 25, 1936 changed this but that part of the amendment was expressly limited in its application to taxable years beginning after December 31, 1935. Therefore, the amendment does not apply to the two taxable years here in question since both of those years began prior to December 31, 1935. The petitioner, in the returns which it filed, lumped together all of its contracts for each of the years and computed its liability accordingly. But it now contends *9 that, if it erred in that respect, then it also erred, and the Commissioner likewise erred, in determining that the contracts reported as completed in each of the first two years were completed in those years within the meaning of the Vinson Act. The Act requires reports and payments "upon the completion of the contract." The contracts were reported as completed in the years when the material contracted for was delivered to the Navy. The petitioner now argues, however, that the contracts for the first two years were not completed at that time but remained incomplete until some later date. Apparently, this later date would be either five years later or at whatever earlier date the goods were finally accepted by the Navy. It argues that it could not possibly compute its actual profit on the goods at the time it made delivery because thereafter the Navy did further processing, finishing, and testing which might show up a defect, and if a defect were discovered, the petitioner would have to make additional expenditures. The record shows that the petitioner was bound by the provisions of Navy Ordnance Pamphlet No. 9 in regard to gun forgings, but it does not show that the petitioner was *10 subject to any similar provisions in regard to other products which it supplied under its Navy contracts. The record does not show which contracts were for gun forgings and which were not. Thus, even if the petitioner's argument were sound with respect to contracts covered by Navy Ordnance Pamphlet No. 9, nevertheless, the extent to which the argument would apply in this case could not be reduced to any definite figure. However, this failure of proof is of no consequence since a similar argument has been considered and rejected in at least one prior case. Articles of equipment were manufactured by the petitioner in Foster Wheeler Corporation, supra, and delivered to the Navy in 1935 after having been inspected. The goods were subject to a one-year guarantee. A part of the purchase price was withheld until a later year [2] when the equipment had been installed, tested, and finally approved. We said that "the installation and tests of the contract materials aboard ship, which were made by the Government in 1936, obviously were not part of petitioner's work under the contract", and held that the contract was completed within the meaning of the Act when the contractor completed *11 the contract work and delivered the articles to the Navy. Cf. Douglas Aircraft Co., Inc., supra; Waterbury Tool Company, 2 T.C. 904. The petitioner in the latter case was required to replace material which did not prove satisfactory in performance for two years after being installed. Some material was actually replaced after delivery. We nevertheless held that the contract was completed within the meaning of the Vinson Act in an earlier year. "The completion of the contract" refers, of course, to the completion of the contract itself and not to the final completion, through additional processing, of the final product which the Navy may use. The articles called for by many of the contracts in this case were rough forgings. The parties contemplated that the Navy would do additional work on those forgings, but the contract of this petitioner was none the less completed when it delivered the forgings. Machining and other processes performed by the Navy upon the materials furnished by the petitioner were no part of the petitioner's work under *12 the contracts. Here, as in the Foster Wheeler case, the contract was completed upon delivery of the goods. This is so even as to gun forgings as to which the petitioner might thereafter have to make some replacements or pay additional amounts on account of the discovery of defects. The regulations provide for refunds in case additional costs are later incurred. We hold that the contracts in question were completed in the fiscal years ending April 30, 1935 and 1936 when the materials called for by the contracts were delivered to the Navy. No question is raised as to just when the reports were due. The petitioner does not claim that its reports called for in the Vinson Act and regulations promulgated pursuant thereto were timely filed, but, in effect, concedes that they were filed after the due dates. The Commissioner had determined that certain additional amounts totaling $17,245.22 are due because of the late filing. See section 291 of the Revenue Act of 1934 and similar provisions in later Acts and the Internal Revenue Code. The petitioner contests the imposition of this socalled penalty only on the ground that its failure to file the reports on time was due to reasonable cause *13 and not to willful neglect. The law provides that no addition shall be made where a return is filed late "and it is shown that the failure to file it was due to reasonable cause and not due to willful neglect." The petitioner has introduced a great deal of evidence in an effort to explain and justify its failure to file these reports on time. It points out that a great deal of work was required to prepare the returns. Its officers felt that the system of bookkeeping regularly employed was inadequate for the purpose of making the reports on Navy contracts and, therefore, special records and additional data pertaining to these contracts were maintained following the passage of the Act. The officers of the petitioner were fully aware that reports were required. They consulted a firm of accountants in 1935 and 1936, and in 1939 employed the firm to assist in preparing the reports because they felt their own accounting force was inadequate for the task. The regulations provided that reports "as nearly complete and final as it is possible for the contracting party to prepare" should be filed on or before the due dates, and there was also provision for obtaining an extension of time within *14 which to file returns. Representatives of the Treasury Department reminded the petitioner more than once that the required reports had not been filed. The petitioner replied attempting to explain its delay but it never requested the Commissioner to extend the time for filing its reports with the Treasury Department and no extension of time was ever granted. The petitioner argues that it acted throughout in good faith and proceeded diligently, but because of the confusion, complexity, and enormity of the task it was unable to file the reports within the prescribed time. The evidence does not bear out the petitioner's contention that it proceeded diligently, nor does it show that it was impossible for the petitioner to file the reports on time or within some extension which it might have obtained. No doubt the task was burdensome, but that can not be regarded as reasonable cause for failure to file reports on time. Nor is it sufficient excuse that the petitioner acted in good faith. The reports were finally completed and filed with outside assistance. Such assistance might have been obtained earlier and the reports filed on time. The petitioner has not shown that its failure to file *15 on time was due to reasonable cause. The Commissioner did not err in his determination that additional amounts were due for delinquency in filing reports. Rogers Hornsby, 26 B.T.A. 591; Charles E. Pearsall & Son, 29 B.T.A. 747; George S. Van Schaick, 32 B.T.A. 736, 744. The foregoing discussion disposes of all of the issues which were properly presented for decision in this case. It follows that the determination of the Commissioner, as set forth in his notice of March 31, 1943, must be approved. The respondent has tried unsuccessfully to have us consider and decide an issue in regard to additional penalties. We have refused because it has not been properly raised as required by the statute and the rules of this Court and, further, because the facts upon which to base a decision of such an issue are not properly presented. Decision will be entered for the respondent. Footnotes
1. Act of March 27, 1934 (48 Stat. 505) as amended by the Act of June 25, 1936 (49 Stat. 1926), and by the Act of April 3, 1939 (53 Stat. 555).↩
2. Neither party to this proceeding has gone into the question of when payment was made under the contracts here in question.↩